ARMAND and ALFRED MERCIER *v.* J. F. CANONGE et al., CITIZENS' BANK OF LOUISIANA, and UNION BANK OF LOUISIANA.

It is true, that by the Code, the property of the tutor is tacitly mortgaged in favor of the minor from the day of the appointment of the tutor, as security for his administration, and for the responsibility which results from it. But an interpretation of this provision, independent of other principles of our laws and jurisprudence, is inadmissible.

Ordinary mortgages are required to be created by the formal, written consent of the parties, for specific sums, and to be inscribed upon the public records. But the tacit mortgage operates secretly, and by a legal fiction. It is in derogation of common right. It should, therefore, be strictly construed. The propriety of such strict construction is aided by the consideration that the system of tacit mortgages is one which tends to impair public confidence, and check that free circulation of property which is so conducive to the general prosperity.

As against innocent third persons, purchasers, or mortgagees for a valuable consideration, the language of the Code may be properly interpreted as applying to the ostensible property of the tutor, and as not extending to that in which he has only a covert, equitable interest.

The law treats minors as a privileged class in certain respects; but its protection is not to be strained to the detriment of the great mass of society, or to the sacrifice of that well-settled rule which regards with favor the rights of an innocent purchaser, and refuses to affect him by a secret equity.

It would be a doctrine fraught with the most dangerous consequences to stockholders, and inconsistent with the theory of corporations, to hold that the private knowledge of two Directors, not clothed with any special authority in the premises, and constituting a small minority of the Board—and which knowledge was not disclosed to the Board—should destroy the rights of the Corporation.

There is nothing in the Code to limit the minor's tacit mortgage to the property which stands upon the public records in the name of the tutor. The Article of the Code is general in its terms, and embraces all the property—*tous les biens*—which can be shewn to belong to the tutor.—*Rost*, J., dissenting.

The tutor has himself acknowledged that he placed the property in the name of his sister, to keep it from the minor's mortgage. He could not do indirectly, what he could not have done directly.—*Rost*, J.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Soulé*, for plaintiffs. *Denis* and *Pitot*, for defendants and appellants.

SLIDELL,[*] J. The plaintiffs are creditors of *J. F. Canonge*, their former tutor, who was appointed in 1832, and gave the usual bond, with a surety. The object of the present suit is to enforce their alleged right of tacit mortgage upon certain real estate, which was mortgaged in the years 1837, 1838, and 1839, by *Miss Aimee Canonge*, to the Citizens' Bank and the Union Bank. Their pretensions are resisted by the Banks, who are the appellants in this cause, from a judgment according a preference to the tacit mortgagees.

The real estate in question never at any time stood upon the public records in the name of *J. F. Canonge*. It was conveyed by other parties to *Miss Canonge*, by deeds in the usual form; and in these deeds, and in the mortgages executed by her in favor of the Banks, she appeared as the unqualified owner. But under the parole evidence, (the exceptions to which we deem it unnecessary to consider,) it appears that *Miss Canonge* had only the apparent title. The whole of the property was, in reality, purchased by *Jean François Canonge*, her brother, for his own account, and with his own funds. The titles of the property were made to her for his convenience, and with a view to its easy use for the purpose of future sale or mortgage; which could not have been effected with the same facility, if they had been purchased in his own name, in consequence of his holding the office of tutor, which would have involved the incumbrance of a tacit mortgage in favor of his wards. *Canonge*, in his answer, asserts that he

[*] *Eustis*, C. J., did not sit in this case, having an interest in the event, he being a stockholder of the Union Bank.

MERCIER
v.
CANONGE.

believed at the time, that his other property was amply sufficient for the protection of his wards, and the evidence tends to justify the sincerity of that opinion, However important this may be, so far as the mere moral aspect of the transaction may be involved, we have not considered it as materially affecting the legal questions presented for our solution.

The District Judge was of opinion that the tacit mortgage of the minors operated upon the property to the detriment of the Banks, even considered as third persons.

It is true that by our Code, " the property of the tutor is tacitly mortgaged in favor of the minor from the day of the appointment of the tutor, as security for his administration, and for the responsibility which results from it." Civil Code, art. 3782. If these terms are to be interpreted in their largest and most liberal sense, and without reference to the provisions and principles of our laws and jurisprudence, the conclusion might be drawn from them that all the tutor's property, legal or equitable, open or concealed, was affected by the tacit incumbrance in preference to all the world. But an interpretation thus isolated seems to us inadmissible.

Ordinary mortgages are required to be created by the formal, written consent of the parties, for specific sums, and to be inscribed upon the public records. But the tacit mortgage operates secretly, and by a legal fiction. It is in derogation of common right. It should, therefore, be strictly construed. The propriety of such strict construction is aided by the consideration that the system of tacit mortgages is one which tends to impair public confidence, and check the free circulation of property, which is so conducive to the general prosperity.

Keeping these principles in view, we are of opinion that as against innocent third persons, purchasers, or mortgagees for a valuable consideration, the language of the Code may be properly interpreted as applying to the ostensible property of the tutor, and as not extending to that in which he has only a covert, equitable interest.

It is said by counsel that minors are the favorites of the law. The law does treat them as a privileged class in certain respects ; but its protection is not to be strained to the detriment of the great mass of society. If the doctrine for which the plaintiffs contend be sanctioned, what becomes of that settled rule of jurisprudence which regards with favor the rights of an innocent purchaser, and refuses to affect him by a secret equity? See the case of *Pike* v. *Monget*, 4 Annual. *Sayton* v. *McGill*, 2 Ann. 196. *Mills* v. *Falvey*, 1849—not reported. *Stockton* v. *Craddick*, 4 Ann. 286.

The next inquiry is, whether these mortgagees, as is charged, knew when they took their mortgages that, although apparently held by *Miss Canonge*, the property was, in truth, her brother's?

It is obvious that, on this point, the burden is upon the plaintiffs.

As to the Citizens' Bank, it appears that when *Miss Canonge* applied to become a stockholder, which involved a mortgage to secure the stock and stock loans, her titles were submitted, in the usual course, to the attorneys and counsel of the Bank, and were approved. In addition to their report, the Bank was fortified in its confidence by the affidavit of *Miss Canonge*, according to the usual formula prescribed to applicants, that she " was truly and *bona fide* owner of the property by her offered to be mortgaged to the Citizens' Bank of Louisiana to secure the stock she had subscribed for in said institution."

The parole evidence is entirely insufficient to affect the first mortgage given to the Citizens' Bank, by establishing a knowledge of the simulated title of

*Miss Canonge.* In relation to the subsequent incumbrance in favor of that Bank, it is proper to enter into a more detailed notice of the evidence.

*J. F. Canonge* deposed as follows : "When I found it impossible to meet my engagements with the several institutions mentioned in the petition of *Armand* and *Alfred Mercier*, I wrote to them in order to obtain some indulgence, and by turning to my letters, which must be in existence, it will be seen, if my memory serves me well—I believe it does—that I offered to give them mortgages upon the property placed in the name of my sister, and I actually informed them that the property was mine."

To rebut this testimony, as may be reasonably inferred, the defendants offered in evidence, at the trial before the Judge of the Third District Court of New Orleans, the letters of *Canonge* to the Banks. It is not asserted by the counsel for the plaintiffs that these letters revealed the true condition of the property ; and the recollection of *Canonge*, who does not profess to speak positively, is probably inaccurate. That they did not, is asserted by the counsel for the Bank, and at present, for the purposes of argument, we will assume that they did not.

From the other testimony in the cause, it appears that two Directors of the Citizens' Bank were aware, at the period, at least, of some of the mortgage transactions with that Bank, that *Miss Canonge* held property for her brother. But, on the other hand, it is proved affirmatively that others of the Directors were ignorant of it, and that the subject was never brought before the Board. The Board consisted of — Directors, and there is no evidence that the two Directors above referred to were specially charged with the business of these mortgages, or had authority in the affairs of the Bank, other than that which pertained to them *virtute officii* under the charter. It would be a doctrine fraught with the most dangerous consequences to stockholders, and inconsistent with the theory of corporations, to say that the private knowledge of those two Directors, (not clothed with any special authority in the premises, and constituting a small minority of the whole number,) which knowledge was undisclosed to the Board, should destroy the rights of the corporation. This would be attributing to such minority a power to do indirectly, what directly they would be incompetent to do. See the *Louisiana State Bank* v. *Senecal*, 13 La. Rep. 525. *Commercial Bank* v. *Cunningham*, 24 Pick., 276. *National Bank* v. *Norton*, 1 Hill, 578. *Ex-parte Walkins*, 2 Montegut, 348, cited in Angel & Ames on Corp., chap. IX. p. 301.

With regard to the Union Bank, it is in evidence, that two of its Directors were aware that the property standing in *Miss Canonge's* name belonged to her brother. One of them states that he is unable to say whether he derived this information from a conversation with *Canonge*, or from a letter written by him to the Bank; but that it was from one or other of those sources. This letter, addressed by *Canonge* to the Bank, was offered in evidence by the defendants. It contains no suggestion that the property, which he states that his sister will mortgage to secure his liability to the Bank, belongs to himself; and we must, therefore, conclude that the Director derived his information from a personal conversation with *Canonge*, which, it is not shown, was communicated to the Board, or to his associates. The other Director was the person who made the conveyance to *Miss Canonge*, some years before, at the request of her brother, for whom he had previously held the title. The corporation is not, in our opinion, affected by the knowledge of these two Directors, who do not appear to have had any special authority in the matter. The same opinion, *a fortiori*, applies to the knowledge of the Notary before whom the act, or mortgage, was

MERCIER
v.
CANONGE.

excecuted, and who was a mere ministerial officer, employed to clothe in notarial form the contract between the corporation and the other parties.

After a careful consideration of the testimony and documentary evidence in this cause, we are of opinion that the mortgagee dealt with *Miss Canonge* upon the faith of the apparent titles, and without direct or constructive notice of the simulation of those titles; and that, as innocent third persons, who have given a valuable consideration, they are to be preferred to the minors. The latter must look for their indemnity to their tutor, and to his official surety.

It is proper, here, to observe that some of the letters of *Canonge* to the Citizens' Bank, which were offerred in evidence by the Bank, have been mislaid since the trial. It is asserted by the counsel of the Bank that these letters did not disclose the fact that *Canonge* was the real owner of the property mortgaged, and we do not understand the counsel of the plaintiffs as asserting the contrary. Under all the circumstances of the case, and there having been no application to have the cause remanded, in order to supply the loss of these letters by evidence of their contents, we have assumed that they did not disclose the real ownership. If the plaintiffs' counsel had differed with the counsel of the defendants in his recollection of the contents of the letters, we should have considered it a sufficient cause for remanding; and, if there be any difference of recollection now, we should be disposed still to consider it, on an application for rehearing, accompanied by a representation of counsel to that effect.

It is, therefore, decreed that so much of the judgment of the Court below, as in any wise affects the said Citizens' Bank of Louisiana and the said Union Bank of Louisiana, be reversed, and that there be judgment in favor of the said Citizens' Bank of Louisiana and the said Union Bank of Louisiana, and against the said plaintiffs, the costs, in both Courts, of the proceeding against said Banks to be paid by the said plaintiffs.

DUNBAR, J., concurred in the opinion delivered by *Slidell*, J.

ROST, J., (dissenting.) It is true that the petition and answers present all the issues of a revocatory action, and it is in that aspect that the case has been almost exclusively argued in behalf of the appellants. The authorities cited by their counsel from the French commentators have exclusive reference to the *Actio Polliana*, and the cases of *Thomas* v. *Meade*, and *Foster* v. *Foster*, were, also, revocatory actions. Toullier, vol. 8, Nos. 56, 57, 146. Chardon, *de la Fraude*, p. 129 to 132. Duranton, 10, Nos. 581, 582, 583. Tolon, Théorie, &c., vol. 2, Nos. 183 to 172. 8 N. S. 341. 11 L. R. 401.

The rule to be deduced from those authorities is, that if a suit be brought to set aside a conveyance obtained by fraud, or made in fraud of creditors, and the fraud be proved, the conveyance will be set aside between the parties. But the rights of third persons, acquired in good faith on the property after the date of the fraudulent conveyance, will not be disregarded. This principle will never be departed from, and if the mortgages in this case were taken in good faith and for a valuable consideration, it is clear they could not be set aside in a revocatory action. I do not deem it necessary to go at large into the question of good faith, as if there was bad faith. I incline to the opinion of the District Judge, that the action would be barred by the prescription of one year, under Art. 1982, C. C. In justice to the defendants, however, it is proper to state that the evidence does dot justify the imputation of an intention on their part to commit a fraud against the plaintiffs. The knowledge of the Notary and of some of the Directors of the Union Bank, is not the knowledge of the corporation, and although it seems conceded that the Citizens' Bank was aware of the

real ownership of the property when they took the last mortgage, it is nowhere shown that they were aware at the time, of the claim of the plaintiffs, or even of the fact that *Canonge* was their tutor.

But, as well observed by the District Judge, there is another light in which the claim of the plaintiffs is set forth. They claim a legal mortgage upon this property on the ground that it was, in reality, owned by their tutor while they were under his guardianship. It is not necessary, under this view of the action, that the subsequent mortgages be revoked. It is sufficient to establish the existence and priority of their own.

To arrive at a correct solution of the important question thus presented, I will first examine what the rights of the plaintiffs were, in relation to that property after *Miss Canonge* purchased it, and before she gave a mortgage upon it to the appellants. Art. 3280, C. C., provides that minors have a legal mortgage on the property of their tutor from the day of his appointment, as a surety for his administration. The appellants' counsel urge, that this article only includes the property standing in the name of the tutor on the public records. Under this interpretation, property acquired by inheritance, or by prescription, and held without title, would never be affected by legal mortgages. There is nothing in the Article of the Code to authorise such a limitation. It is general in its terms, and embraces all the property, *tous les biens*, which can be shown to belong to the tutor.

The evidence placed the fact beyond all doubt, and it was admitted in argument, that the property in dispute was purchased and paid for by *Judge Canonge*, and that it belonged to him. I fully believe that the title was not thus taken with any fraudulent intent; but *Judge Canonge* himself has stated that his object was to keep the property from the minors' mortgage, and it is elementary that he could not do indirectly what he could not have done directly. So long as no right in the property, adverse to that of the plaintiffs, had been created, they had nothing to do but to remove the shadow cast upon the title, and their legal mortgage would affect the property by operation of law. The property would, in that case, have returned to *Canonge* free from the ordinary debts of his sister, and in a contest with his creditors the plaintiffs would have been entitled to be paid by preference, according to the date of their legal mortgage.

Let us now proceed one step farther, and ascertain whether the legal mortgage does not also affect the property to the prejudice of the appellants. It is said, in their behalf, that they acted with due diligence in their dealings with *Miss Canonge*, and that as they had, and in the nature of things could have no notice of the legal mortgage of the plaintiffs, it cannot be exercised to their prejudice.

If this was one of the mortgages for which the law requires publicity, the argument would be unanswerable. The mortgage would unquestionably have lost its rank for want of inscription. But the legal mortgages which the law gives to minors are not thus affected by non-inscription. No publicity is required as to them, and I can make no distinction between this case and another very similar to it, which naturally suggests itself to the mind. Suppose that notes belonging to the minors had been placed by the tutor in the hands of his sister for collection, and that after collecting them she had invested the proceeds in houses and lots. This would have been such an interference in the administration of the minors' property, as would have created a legal mortgage on all the property of *Miss Canonge* under Art. 3183 C. C. The origin of the funds used in those purchases would have been, between the purchaser and her brother, a family secret, impossible to discover. The record of mortgages would have

MERCIER
v.
CANONGE.

shown no lien upon her property, and in subscribing for stock of the Citizens' Bank she might have sworn, with perfect truth, that she was the owner of the property, and also that she never had been tutrix of minors. The Bank must, therefore, in that case also have been satisfied with her title, and yet the legal mortgage of the plaintiffs would remain in full force, and take precedence of all others. *Ward* v. *Brandt et al.*, 11 Martin 331. *Nolte & Co.* v. *their Creditors*, 8 N. S. 367. Art. 3283 C. C.

If there be any difference between the two cases, the case put would be harder than the present upon the defendants.

It should not be lost sight of, that there are cases in which the registry laws themselves are inadequate to the protection of innocent third persons, even where registry is required. It is so, for instance, in cases of resolution of sales for the non-payment of the price. The property returns to the vendor free from all incumbrances which affected it in the name of the purchaser, either by convention, or by operation, of law, and it is no defence for a subsequent mortgagee that he had no notice of the right of the vendor to claim the resolution of the contract. *Chrétien* v. *Richardson et al.*, 5th Annual.

It has been urged that part of the money borrowed by *Miss Canonge* went to pay the price of the property mortgaged; but there is no satisfactory evidence of that fact.

The Royal street property, although purchased before the appointment of *Judge Canonge* as tutor, belonged to him during the tutorship, and is, like the other, subject to the plaintiffs' mortgage.

I am of opinion that justice has been done between the parties, and that the judgment ought to be affirmed.