TATE, Judge.
This is a petitory action brought by two heirs seeking to recover an undivided one-fourth interest in immovable property which had formed a part of their mother’s succession. They appeal from the dismissal of their suit.
On May 20, 1938, the plaintiffs’ mother died intestate, being survived by her husband, two major children, and the two plaintiffs, who were minors at that time. Plaintiffs’ claim is based upon the alleged nullity of a judgment of March 9, 1939 adjudicating under LSA-Civil Code Article 343 [1] their interest in the subject property to their father, who subsequently on August 28, 1942 transferred the property to the Cottonport Bank, defendant herein, in exchange for the cancellation of mortgages on the subject property held by this bank. It is stipulated that the defendant bank has been in possession of the property so conveyed to it for at least ten years prior to the filing of this suit in 1957.
The appellee’s plea of ten years’ acquisitive prescription, which (as well as several other defenses) was sustained by the trial court, is based upon its acquisition of the 300-odd acres in question from the plaintiff’s father and the major heirs by this deed of August 28, 1942.
Before discussing the plea of prescription, we may at this point note our agreement with the trial court that the various claimed irregularities in the proceedings leading to adjudication were, at best, non.prejudicial informalities or obvious clerical errors cured by the judgment homologating the adjudication. We further agree that the probate and adjudication proceedings as a whole, as well as the evidence reflecting that the succession was heavily burdened with mortgages in 1939, reflect that no advantage was taken of the minors and that they received a very fair consideration, adequately secured, for the property adjudicated to their father.
The appellants urge that the defendant bank’s plea of ten years’ acquisitive prescription under LSA-C.C. Art. 3478 must be overruled, arguing that two of the essential pre-requisites for acquisition by such plea, see LSA-C.C. Art. 3479, are lacking, namely: (1) that the bank did not acquire by “A title which shall be legal, and sufficient to transfer the property”, LSA-C.C. Art. 3479(2); and (2) that the bank was not in good faith at the time of acquisition, LSA-C.C. Art. 3479(1), because of certain knowledge of its officers concerning the alleged invalidity of the title which must be imputed to the bank.
Although counsel for appellants contends that the conveyance of the minors’ interests *585 dated August 28, 1942 was too ambiguous to be a just title and the foundation for acquisitive prescription, we agree with the district court that by this “retrocession sale” or dation en paiement the appellants’ father together with the two major children clearly deeded the property in question to the appellee bank in exchange for the latter’s cancellation of the substantial mortgage thereupon.[2] See LSA-C.C. Arts. 3483-3486, relating to the requisite just title.
In urging that the defendant bank was not in good faith because of the imputed knowledge of its officers, able counsel for the appellants chiefly relies upon the stipulation that both the defendant’s president and its attorney (who was also a director of the bank and who had been the attorney for the succession of the appellant’s mother) personally knew of the appellants’ mother’s death and that she had been survived by two minor children as well as the two. majors. It is then alleged, under authority of Brewer v. Brewer, 1919, 145 La. 835, 83 So. 30, that property owned in indivisión by a minor, and also partly by major co-owners other than the parent, cannot be adjudicated to the parent under LSA-C.C. Art. 343.
While it is true that this is a holding of the Brewer case,[3] nevertheless by Act 17 of 1928 the legislature provided that, six months after its effective date, no action would lie attacking adjudications on the ground “that there was an out-standing interest in majors at the time the property was adjudicated.” [4] This curative act was *586 in effect both in 1939 when the property of the appellants was adjudicated to their father and also in 1942 when the defendant bank purchased it from the father, so that of no decisional significance is the knowledge of the defendant’s officers at either of these dates that there were major co-owners other than the parent at the time of the adjudication to the latter of the minors’ interest in the property.
Likewise, whatever effect this 1928 curative statute’s repeal by Section 2 of Act 2 of the Extraordinary Session of 1950, LSA-R.S. following section 56:1731 (in connection with the enactment of the Louisiana Revised Statutes of 1950) may have had— and whether this repeal was unintentional or merely an intended elimination of a no longer needed curative statute for pre-1914 adjudications (see footnote 4 above) — such repeal could-not, in view of the defendant’s previously good faith, defeat the running of the ten years’ acquisitive prescription. See LSA-C.C. Art. 3482: “It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription.”
We do not understand the appellant to argue that the bank should be charged with notice of various other alleged irregularities in the adjudication proceedings simply because the attorney for the estate who prepared these papers in 1939 for the estate was a director of the bank at that time and also at the time the bank acquired the property in 1942, it not even being shown that he acted as a member of the board approving the 1942 transaction. See 19 C.J.S. Corporations § 1079, pp. 616-617: “ * * * as a general rule, notice to a director, or knowledge acquired by him individually, and not while acting officially as a member of the board, in the business of the corporation, is not to be regarded as notice to the corporation, unless he communicates it to the board or to some officer entitled to receive it, whose knowledge would affect the corporation with notice of it, or unless the director having knowledge which he ought to and can communicate to his co-directors acts as a member of the board on the matter affected thereby.” See also: Leurey v. Bank of Baton Rouge, 131 La. 30, 58 So. 1022; John T. Moore Planting Co. v. Morgan’s Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22; Mercier v. Canonge, 1853, 8 La.Ann. 37; Louisiana State Bank v. Senecal, 1839, 13 La. 525.
But if this be appellant’s argument, and even assuming that the knowledge imputed to this attorney as attorney for the estate can also be imputed to the bank of which he was director at the date of its subsequent acquisition of the property, we do not think that the alleged irregularities in the preparation of the 1939 adjudication proceedings of which he may possibly be held to have knowledge[5] were such as to *587 prevent the bank from being a good faith purchaser in 1942.
Since we find the plea of prescription was correctly sustained, we find it unnecessary to discuss the other contentions of the parties. Accordingly, at plaintiffs’ cost, the trial court judgment dismissing this suit is
Affirmed.

. “Whenever the parent of a minor has property in common with him, the parent can cause the' share of the minor either in the whole of the property or in any part thereof to be adjudicated to the parent at the price of an estimation made under oath by experts appointed by the Judge, * * *"

.Because counsel insists with such apparent earnestness that the deed (which is reproduced in the record at Tr. 75-80 and again at Tr. 96-101) is ambiguous in this regard, we quote several of its clauses to this effect, as follows (Tr. 78-79; Tr. 100):
“ * * * Now the said Modelis O. Guillot, Effie Guillot Kelly, and Vernon Guillot [i. e., the father and major heirs] declare that they are unable to meet the payment of said notes, either in principal, interest or attorney’s fees, and that they are willing to deed the property described hereinabove to Oottonport Bank * * * in consideration that said bank * * * will release them from the payment of said notes; take a deed of sale to the property and cancel said notes, together with mortgages.
“And now the said Oottonport Bank * * * declared its willingness to cancel the mortgages together with the notes and take a deed to the said property * * * and release the said Mo-delis O. Guillot, Effie Guillot Kelly, and Vernon Guillot of any and all liability to them resulting from said mortgages.
“And now the said parties, therefore, hereby cancel the said mortgages and the said notes in full as hereinabove set forth.
“To have and to hold the said property unto said purchaser, its successors and assigns to their proper use and be-hoof forever. And the said vendors do convey the property to the said purchaser, its successors and assigns, and shall and will warrant and forever defend against the lawful claims of all persons, whomsoever, by these presents. * * * ”

. The adjudication there in question had taken place in 1873. It is quite probable that the holding in the Brewer case is based upon the wording of O.O. Art. 343 prior to its amendment by Act 78 of 1914; before which, the codal provision was interpreted only to authorize the adjudication to the parent only of the whole of the property owned in common with the minor, not just of the' minor’s share. See Lyons v. Woman’s League, 1909, 124 La. 222, 230, 50 So. 18; see also Berry v. Wagner, 151 La. 456, 478-479, 91 So. 837. By the 1914 amendment, however, the codal article in its present form authorizes a parent of a minor owning property in indivisión with him to obtain the adjudication of “the share of the minor either in the whole of the property or in any part thereof”. See also Act 23 of 1920. But see the Reporter’s Comments to Article-4361 of the Louisiana Code of Civil Procedure (1960), LSA-C.C.P., recently replacing Civil Code Article 343.

. It can with great plausibility be argued that the purpose of this statute of repose was to validate adjudications made under C.C. Art. 343 prior to the 1914 amendment and subject to attack for the stated reason, since those subsequent thereto probably may not be invalidated for such reason. See footnote 3 above. This, of course, would explain both, why *586 C.C. Art. 343 was itself not further amended and also why, in enacting the Louisiana Revised Statutes of 1950, Act 17 of 1928 and also Act 23 of 1920 were repealed, since the redactors may have felt that curative acts for pre-1914 adjudications were of little further usefulness.

. Such as having adjudicated the minors’ property to the father for a sum greater (not less) than its appraised value; or the father’s having filed a tutor’s bond in a greater (not less) amount than required by the judgment of adjudication; or having described some lands otherwise correctly designated but actually in the Second Ward as being in the Fifth Ward; or having' in - the concurrence of the under-tutor (duly homologated subsequently by the district court) through obvious clerical error incorrectly stated the name of the father and tutor at one place. For simplicity’s sake, we assume that the attorney who prepared the proceedings can be charged with knowledge of these “irregularities”, although we do not think he can be charged — in the absence of some proof — with knowledge of other alleged irregularities relating to the subsequent mis-recordation of the adjudication proceedings, for which however a bond and special mortgage had been .substituted to secure the minor’s interest. See LSA-C.C. Art. 3481: “Good faith is always presumed in matters of prescription; he who alleges bad faith in the possessor, must prove it'.”