BENJAMIN WINCHESTER *v.* DEMPSEY P. CAIN and another.

In a petitory action the plaintiff must recover upon the strength of his own title, not upon the weakness of his adversary's.

Where, by an agreement among the heirs, the community property is adjudicated to the widow, on the condition of her paying the portions due to each of the heirs, such adjudication amounts to a sale, and vests the estate in her.

Any irregularity in the adjudication to the widow of the interest of a minor heir in the property of a community, can only be taken advantage of by such heir, or by those claiming under him.

One against whom a litigious right has been purchased, may be released therefrom by paying the transferree the real price of the transfer, with interest from its date.

Strict compliance with the law, and the police regulations, must be shown, to legalize a sale of land by Commissioners of Roads and Levees, made to pay for work done thereon.

Under the act of the 15th of March, 1830, the owner of lands sold for taxes due to the state, may redeem the same, in the case of non-residents at any time within two years, and in all other cases within one year.

The law authorizing the redemption of lands sold for taxes, will be interpreted liberally.

APPEAL from the District Court of East Baton Rouge, *Johnson, J.*

GARLAND, J. The plaintiff claims a tract of land of fifteen *arpens* front, by forty deep, on the Mississippi river, in the parish of West Baton Rouge, bounded above by lands formerly belonging to Stephen Watts, and below by those confirmed to Jean M. Durand. He says that he holds by mesne conveyances from Louis Mollere, the original grantee of the spanish government, in whose name the claim was confirmed by the United States. The defendants also claim to hold under Mollere; so there is no dispute about the original title, or the *locus in quo.* The question is, which party has the best right to Mollere's title.

Some time previous to March, 1821, Mollere died in the parish of Ascension, where his succession was opened, leaving one minor and six major heirs, and their mother, to represent their respective interests. A family meeting was held in the month of March, 1821, at which it was agreed to let the widow take all the property at the price of the estimation, and to pay the children their respective portions in their father's estate. To this all the major heirs agreed,

either by joining in the proceedings, or by ratifying them subsequently. An inventory was made of the property which was in community between the widow and her deceased husband, on which the tract of land in controversy was placed, and, with the other property, adjudicated to Madame Mollere. In August, 1835, she sold, by public act, all her right, title, and interest, without warranty, to the plaintiff.

The defendants show that in September, 1822, the Parish judge of West Baton Rouge adjudicated to Louis Viales, ' a tract of land of five *arpens* front, belonging to Louis Molier.' The deed recites that this land was sold by the Commissioners of Roads and Levees, duly appointed, for the purpose of paying for work done on said land. In January, 1823, the same Parish judge sold to Louis Viales, a tract of land of fifteen *arpens* front, on the Mississippi river, which belonged to Watt's estate, bounded below by the land of Molier, and which was also sold to pay for work on the roads and levees. This last sale is only material in this controversy as it defines the position of the land in dispute. Both these sales are said to have been made ' by virtue of the regulations of the Police Jury of the parish of West Baton Rouge'; but these regulations are not in evidence.

Louis Viales died, and some time afterwards his widow made a cession of her property to her creditors ; and in June, 1829, the Parish judge aforesaid sold at public auction to F. Menard, a tract of land of twenty *arpens* front, for $535. This tract was composed of the five *arpens* front of the Mollere tract, and the fifteen front of the Watts' tract, and in the sale it is said to be bounded on one side by the land of *Molaire.*

On the 12th of October, 1833, the sheriff of West Baton Rouge, ' by virtue of a return made to him by the State Treasurer against the lands of non-residents of the parish of West Baton Rouge, seized all right, title, interest, or demand of Louis *Molire*, in and to a certain tract of land situated in the aforesaid parish on the river Mississippi, containing six hundred superficial *arpens*, more or less, said tract of land having been returned to the State Treasurer for non-payment of taxes, for the year 1819.' The land was sold for $18 16, to the same F. Menard, who had purchased at Madame Viales' sale. The sheriff made him a deed, in which

there is no other description of the land, than that of its being a tract on the Mississippi river, in the parish of West Baton Rouge, containing six hundred superficial *arpens*, more or less. Menard and wife sold to the defendants thirty *arpens* front on the river, which comprised the tracts of Watts and Mollere, with a general warranty for the upper twenty *arpens* front, and a special warranty as to the lower ten *arpens* front.

There are some other facts in the case, that will be noticed in connection with the points made. The widow and heirs of Menard were called in warranty, and have answered, denying their liability as general warrantors, but saying that, if they are so, the title they have sold to defendants is better than that of the plaintiff.

The plaintiff, in addition to his prayer to recover the land, asks damages to the amount of $10,000, for waste and destruction of timber, and for the use of the premises. The defendants also ask for a like sum, for improvements, in case of eviction. There was a judgment of non-suit in the court below; and the plaintiff has appealed.

The defendants say that they are in possession under a *prima facie* title, and that the plaintiff must recover on the strength of his own, not upon the weakness of theirs. This principle is well established. The title of Mollere is not questioned. How then has the plaintiff acquired it? He says, by the adjudication made in March, 1821, to Madame Mollere, his vendee. To this the defendants answer, that the adjudication was a nullity, because the tract of land was not community property, but the separate property of the husband, having been granted to him individually. To this it is answered that all the property which the husband and wife reciprocally possessed at the dissolution of the marriage, is presumed to belong to the community. It is further shown, that the land was put in the inventory as belonging to the community. It seems to have been so considered by the family meeting, and six of the major heirs conceded it to be such, by consenting to the adjudication. As to six-sevenths there cannot be a question; the adjudication amounted to a sale, and vested the interest of the major heirs in their mother, and she could legally sell it. As to the remaining seventh, the plaintiff says that if there is any irregularity in adjudicating the portion of the minor heiress, it is

only relative, and cannot be set up by the defendants, as the heiress does not complain after a lapse of more than twenty years. As to the minor, the adjudication may probably be a nullity, but no one can avail themselves of it, but the minor, or some person claiming under her. The defendants say that they claim under her, by virtue of the sales made to their authors; but we think otherwise. We do not think that any of the rights of the heirs of Mollere have descended to the defendants; and they cannot set them up as a defence. 9 La., 302, 305.

In the argument of the cause in this court, the counsel for the defendants has strongly urged, that the plaintiff purchased a litigious right, and that they have a right to be released from it, by paying him the real price of the transfer, with interest from its date. If the right be litigious, there is no question that such is the law; but the defendants have not set up any such defence by their pleadings, nor do they show that they ever offered to restore to the plaintiff the price he paid to Madame Mollere, with interest, at any time previous to filing their answers. This defence cannot now avail them.

As to the sale of the five *arpens* front of land to Viales, in September, 1822, we are not satisfied of its legality. Mollere was then dead, and the land had been adjudicated to his widow. There is no evidence of any of the formalities of law having been complied with. There is nothing to show what were the proceedings of the Commissioners of Roads and Levees, or that Madame Mollere, or any one representing her, had any notice of the proceedings. There is nothing in the record, except the conveyance from the Parish judge. This court has always held, that a strict compliance with the laws, and the police regulations, must be shown, to legalize sales of this description. 2 Martin, N. S., 455. 5 La,, 45. But as it may be in the power of the defendants to show that these proceedings were conducted legally, we will not preclude them from doing so; and therefore leave the question open for further investigation.

We have not thought it necessary to enquire into the alleged illegalities of the sale made by the sheriff for the taxes of 1819, as it may be admitted that the sale was legal, and still the plaintiff will not be deprived of his rights. He had a right to redeem the land

at any time within two years, under the same law, by virtue of which it was sold, 1 Bullard and Curry's Digest, p. 730, secs. 17, 18; and it is clearly proved that he not only tendered Menard more than he was entitled to receive, but deposited it in the office of the parish judge of West Baton Rouge, within the time of redemption. Menard was therefore bound to reconvey the land, and cannot by refusing to do so, and selling it, deprive the plaintiff of his rights.

The counsel for the defendants insists, that the law authorizing the redemption of land sold for taxes, ought to be rigidly construed. We think otherwise, and a perusal of it, independent of any questions of public policy, satisfies us that the legislature intended that it should be liberally interpreted.

The judgment of the District Court is annulled and reversed, and the cause remanded for a new trial, with instructions to the judge to conform to the principles herein settled, and otherwise proceed according to law ; the appellees paying the costs of this appeal.

*Janin*, for the appellant.

*R. N. Ogden*, for the defendants.