## EMMA FERRIER, Wife of DASILYA, *v.* AUGUSTE FERRIER.

Action to annul an adjudication of community property made to plaintiff's father. The grounds for setting aside the adjudication were, that:

1. The family meeting was not composed of the nearest relations.

2. No representative of the then minor was cited to show cause why the decree of adjudication should not be reversed

3. The members of the family meeting were not notified three days before it was held.

4. The notarial inventory, to which the decree of adjudication refers for the price, is null, because the appraisers were not appointed by the Judge. *Held:* That there was no authority to annul the adjudication by reason of these informalities—the minor having been regularly represented—and there being no fraud, or other matter alleged, that would make it against good conscience to enforce the decree. If the informalities were remediable at all, they were remediable by appeal. Where a special mortgage has been lawfully given in lieu of the general mortgage on the property of the surviving spouse, for the minor's interest in the succession of the deceased parent, the minor, when he becomes of age, should not be heard in an attempt to burthen the property of his parent with a general mortgage, the special mortgage being sufficient to secure his rights, and the attempt to substitute the general mortgage, resting upon mere informalities in a family meeting.

C. P. 615.

APPEAL from the District Court of the Parish of Point Coupée, *Cooley,* J. Janin, for appellant:

There is nothing more familiar in our law, than that, if a minor receives, after coming of age, the proceeds of his property, illegally sold during his minority, he ratifies the sale. 8 Toullier, 707. C. C., Arts. 2252, 1778, sec. 6, 1869. 2 A. R. 367. 9 La. R. 304. 2 R. R. 20. 3 R. R. 256. 10 R. R. 129. 4 R. R. 127.

The first point is, that the family meeting was not composed of the nearest relatives—that relatives were excluded and friends taken in their place. The testimony of *Zénon Porche,* the under tutor, and uncle of the minors, indeed their nearest relative in the parish, shows that those relatives who were excluded, lived in distant parts of the parish, and were not on visiting or intimate terms with the family ; that one of them was a confirmed drunkard, and that those persons who were taken in their place, were respectable and intelligent business men and friends of the family. Speaking of such subjects, Toullier says : Les circonstances, impriment-elles à ces contraventions (si contraventions il y a,) un caractère assez grave pour prononcer la nullité des actes, où elles ont été commises ? Car c'est toujours le plus grand bien des mineurs, qui doit servir aux tribunaux de guide à leurs décisions. 2 Toullier, 329.

The law of March 18, 1809, which is not repealed, (see 2 Ann. 162,) says, "the property is to be adjudicated according to the estimated value of the inventory." And the law of February 18, 1817, sec. 6, says, "that when a surviving father or mother wishes to take the property specified in the legal inventory made after the decease of either, at the price of appraisement mentioned in said inventory," &c. This has been, ever since, the universal practice throughout the State, and this is no doubt the true sense of Article 398 C. C.

And all these fancied irregularities were anterior to the decree of adjudication, and could not affect, under any circumstances, *bona fide* purchasers. 13 La. R. 434, *Lalanne* v. *Moreau; Fabre* v. *Hepp,* 7 A. R. 9, and numerous other cases.

After the argument, the court submitted to the counsel the following question:

"*Ferrier* v. *Ferrier.*—The court desires argument, in writing, on the question whether a judgment of adjudication to the surviving spouse, is a judgment in such a sense as to subject it to the rules respecting nullity and rescission of judgments contained in the provisions of the Code of Practice—on the nullity and rescission of judgments, in Articles 604 to 616 inclusive, one of which, 615, has been amended by Act of 1826 [Greiner's Digest, No. 1957]; and also, whether in this case, there is any legal ground under provisions of Code of Practice to annul or rescind the judgment, or whether, on the contrary, the remedy should not have been by appeal. C. P. 564, 572, 593.

"The same inquiry as to the action to annul the judgment substituting a special for a general mortgage.

"The above does not relate to the question as to what property was included in the judgment of adjudication, or in other words the interpretation of the judgment, which has been sufficiently argued."

On this question, the following brief was filed by *Ogden & Leovy* :

We cheerfully comply with this request, but beg leave first to submit very respectfully to the court, whether any such issue is presented by the pleadings in this case, and if not, whether it can be supplied by the court. The question could only have been raised by a peremptory exception *in limine litis*, and before answering to the merits. "Exceptions are means of defence used by the defendant to retard, prevent, or defeat the demand brought against him" (C. P., Art. 330); and "Peremptory exceptions are those which tend to the dismissal of the action." C. P., Art. 343. Of these, there are two kinds, those relating to forms, and those founded on law. The point now under consideration falls within one of these two kinds of exception, and in either case must be specially pleaded. If it is an exception to form, "it must be pleaded *in limine litis*, that is to say at the beginning of the suit, and before answering to the merits. After the defendant has pleaded to the merits, such exceptions shall not be heard ; all nullities are cured." C. P. 344. If the exceptions be "founded on law, they must be pleaded specially, and sufficient time allowed to the adverse party to bring his evidence. C. P. 346. "The defendant must plead in his answer all the dilatory or peremptory exceptions on which he intends to rely, or which he is bound to plead expressly and specially, pursuant to the provisions of this Code."—336.

The defendant, by answering to the merits, is presumed to have waived all exceptions. In the case of *Singleton* v. *Smith*, 4 La., 432, the court says, "This suit is brought on a judgment rendered in the sixth district, and an exception was filed to the right of the plaintiff to maintain two actions within the State for the same cause. Whether this exception was not well taken cannot be inquired into, as it does not appear to have been passed on by the court below, and the defendant waived it by filing an answer in which the merits were put in issue." See also 3 R. R. 357. Not only must exceptions be filed in such cases, but if they be filed and not insisted upon, as where an answer to the merits is filed and the case tried on the merits, the exceptional points are considered as waived, and the court cannot regard them. C. P. 334. 12 R. R. 194. 3 R. R., 357.

It has been the invariable practice to disregard all questions not put at issue by the pleadings. Even the plea of prescription cannot be supplied by the court, though it is so highly favored that it may be made in every stage of an action previous to a definite judgment, even in the Supreme Court. The legal presumption of waiver of exceptions by answering to the merits, is strengthened in this case by its peculiar character, and the relations of the parties, rendering it probable that the defendant preferred a trial on the merits. No exception can be supplied, or, as we believe, ever has been supplied by the court, but that of the absolute incompetency of the court below *ratione materiæ*, and it cannot be contended that any defect of jurisdiction existed in this case.

We further submit that if these decrees are judgments in such sense as to subject them to the rules of the Code of Practice referred to ; that the causes for which the nullity of a judgment may be demanded, as stated in Articles

604 to 616 of the Code of Practice, are not exclusive of other causes. Those causes are divided into two kinds, one relative to the form of proceedings, the other appertaining to the merits of the question tried. C. P. 605. The vices of form are four, and are enumerated in Article 606, C. P., and in the French of that article are said to be "Les seules causes pour lesquelles on peut demander la nullité des jugemens." But Article 607 naming the causes appertaining to the merits for which the nullity may be demanded, does not declare that they are the sole causes, and contains nothing that excludes other good reasons for demanding nullity. The language used is not more restrictive than that of Article 560 C. P., stating what are causes for new trials, and yet our Supreme Court has granted new trials for many other causes than those enumerated in that article. But we are not left to mere speculation on this point. It has been presented to the Supreme Court in two cases, and in both instances our construction is sustained. In *Chinn* v. *The First Municipality*, 1 R. R. 523, the plaintiff sued for nullity on a ground not included in the Code of Practice. Judge Martin, delivering the opinion, says, "This action does not expressly present one of those cases in which the Code of Practice declares that an action of nullity will lie, but we are not ready to say that after a judgment has been obtained by which the party shows that he will sustain a real injury unless he can obtain relief, and that relief cannot be sought in this court, it may not be obtained in the lower court, where the case presents facts, on which, in the other States of the Union, a court of equity would interfere." And in the case of *Norris* v. *Fristoe*, 3 Ann. 647, Judge Slidell, delivering the opinion of the court, "it is provided by the Code of Practice, Article 607, that a definite judgment may be annulled in all cases where it appears that it has been obtained through fraud," &c., "we concur with the plaintiff's counsel in the position that the relief by action of nullity is not to be restricted to the cases specially enumerated. They are put by way of illustration, and the article may be considered as enunciating the principle that even after judgment a party may be relieved."

We further respectfully suggest, that it is a mistake to suppose, that if in this case there is no legal ground under the provisions of the Code of Practice to annul or rescind the judgments, the only remedy was by appeal. We have shown, we trust, that the causes of nullity enumerated in the Code, are not exclusive. There are four modes by which definitive judgments may be revised, modified or reversed. 1st. By a new trial. 2d. By appeal. 3. By action of nullity. And 4th. By rescission. C. P. Art. 556. And in many cases a party may choose either mode. The nullity may be demanded on the appeal, provided it is apparent on the face of the records. Code of Practice, Article 659. But in many cases the appeal would not be a complete remedy, because the nullity might depend upon matters of proof not found in the record. If, then, one institutes an action in the same court which rendered the judgment, it would be no ground of exception that he ought to appeal. He has his choice of remedies. The jurisdiction is expressly given both in the action of nullity and in that of rescission to the court that rendered the judgment.

We also respectfully submit to the court whether the minor, after coming of age, could appeal from these decrees. By the Code of Practice, Article 567, "the party against whom judgment has been rendered cannot appeal if such judgment have been confessed by him, or if he have acquiesced in the same by executing it voluntarily." These judgments were rendered on the advice and with the consent of the representatives of the minor, empowered by law to give such consent, and acting under oath. The validity of the adjudication does not depend on the judge's decree *proprio vigore*, but upon that consent, which his decree ratifies and confirms. They could not appeal. Could the minor, after attaining majority, appeal from a judgment so rendered? And is it not probably for this reason, and with a view to the harmony of the various provisions of the Code, that the action of rescission is given to the minor and restricted to four years after his majority. "A judgment against a minor may be rescinded if such minor show either that his cause has not been well defended, or that he has been aggrieved by such judgment. But that action shall be prescribed if four years have elapsed after the minor has arrived at the age of majority, nor can it be brought by the curator or the tutor, during the minority of their ward." Art. 615 C. P.

If, however, these views are insufficient and your honors should still think the plaintiff was bound to bring his case within the special provisions of the

Code of Practice referred to, we think it is within this Art. 615. It is true, the amendatory Act of 1826, to which your honors have called our attention, provides that this article " shall not be taken or construed to imply the nullity of a judgment when a minor has been regularly represented in a suit according to law." But this evidently applies to judgments properly so called, rendered contradictorily in suits or contested cases. Every decree or order of a court is not necessarily a judgment. In the case of the *Union Bank of Louisiana* v. *Marin*, 3 Ann. 34, this court held that a decree rendered by consent of parties "is not, legally speaking, a judgment; a judgment is the decision of a controversy given by a court of justice between parties who do not agree. Consent decrees decide nothing. They merely authenticate private agreements, and render them executory between the parties. Their effects as to third persons are those of transactions made in an authentic form. Merlin Rep., verbis homologation, Jugement." And in the case of *Lecarpentier* v. *Lecarpentier*, 5 Ann. 497, it was held by this court that " a sale under a consent decree has not the effect of a judicial partition, and does not affect the rights of mortgage creditors." Such orders and decrees as are now the subject of examination have been regarded by the court rather in the light of contracts for the conveyance of property in which the strictness of legal forms is made to supply the consent of the minor. A suit to annul such proceedings bears a closer analogy to actions to annul contracts for fraud, error or lesion, than to actions to annul the judgments of a court. In the case of *Harty* v. *Harty*, 8 New Series, 518, this subject was carefully examined and fully decided upon by this court. All the various Articles of the Code of Practice to which your honors refer were reviewed. It was a suit brought in the Court of Probates in 1830, "by the heirs of *Harty*, for the purpose of obtaining a decree to annul a judgment of adjudication of certain property which was made to their mother, as having been common between her and them at the death of their father," &c. A plea to the jurisdiction was made, and the court sustained the jurisdiction on the grounds that the provisions relating to the nullity and to the rescission of judgments are so identical in their effects, that they may properly be considered together; and that the Arts. 608 and 616, both gave the jurisdiction over such actions to the same court that had rendered the judgment.

After determing another question, the court says, " It now remains to ascertain whether this transfer or alienation was made in pursuance of the requisite formalities."

On careful examination, it was found that all the requisite formalities had been complied with except one, and the want of that was held fatal to the adjudication. The record offered no evidence that the members of the family meeting had been sworn, and on that ground the judgment of the Probate Court, annulling its former decree of adjudication, was affirmed. In that case, the court used the following language: " This is a privilege granted to the parents in derogation to general rules, established for the protection of those who, from want of age and experience, are supposed to be incapable of guarding their own interests; and ought to be restricted within the precise limits of the provisions under which it is awarded. The alienation allowed by it has all the principal features of a sale—parties, property and consent. The incapacity of the minor to consent is supplied by that of his relations or friends, and his under tutor." The nullity of this adjudication was not demanded on any of the grounds enumerated in the articles of the Code of Practice referred to. From that day to this no doubt has been entertained that an action of nullity or rescission could be brought by a minor within a limited time, after coming of age, when his rights had been injured, although his case might not fall under any one of these provisions.

Many fatal causes of nullity are shown by the proofs in this case to exist, which would not have appeared on the record of appeal from the decrees complained of, and therefore an appeal would have been fruitless. Those causes are not found in the rules of the Code of Practice, because they evidently apply to judgments properly so called, rendered in the trial of suits.

To restrict the right of the minors to an appeal, or to an action of nullity or rescission, for some of the causes in the Code, would often deprive him of all redress, and render nugatory the provisions of law intended for his protection.

Slidell, C. J. The object of this action is to annul an adjudication made

to the plaintiff's father, of certain property which belonged to the community existing between her father and her deceased mother, and of certain other property which was the separate estate of the mother; also to annul a decree by virtue of which a special was substituted for the general mortgage of the father's property, as tutor of the plaintiff, who has now arrived at full age.

The grounds for setting aside the adjudication presented in the petition are as follows : It is alleged that the meeting was not composed of the nearest relatives; that no representative of the minor was cited to show cause why the decree of adjudication should not be rendered; that the members of the meeting were not notified three days before it was held; that the adjudication is null, because the notarial inventory of the 21st June, 1849, to which the decree of adjudication refers for the price, is null, for the reason that the appraisers were not appointed by the Judge. It is also alleged, that the separate property of the mother was not included in the decree of adjudication, nor could it lawfully be adjudicated; and that a certain house in New Orleans and plantation on False River, having thirteen arpents in front by forty in depth, called the Cheval plantation, were not included in the decree of adjudication; that if included, the decree was invalid, because the plantation and house in New Orleans was not mentioned in the inventory of the 21st of June, 1849. For so much of the property in question as is not included in the decree of adjudication, it confers no title, and it is therefore material to scrutinize the terms of the decree. It is in these words :

The court, considering the application of Dr. *Auguste Ferrier*, executor of the last will and testament of *Delphine Porche*, and the deliberations of a family meeting held on the 24th of December, 1849, and being of opinion that the law and evidence are in favor of said application.

It is, therefore, ordered, adjudged and decreed, that the deliberations of the said family meeting, be homologated, and that the shares of the minors, *Léon*, *Rosa* and *Emma Ferrier*, on the property held in community between the said *Auguste Ferrier* and their mother, *Delphine Porche*, be adjudicated to the said *Auguste Ferrier*, at the price it was estimated at, in the public inventory made by Samuel Bush, notary public, on the —— —— ——, and that the said Dr. *Auguste Ferrier* hold in usufruct, during his natural life, the estimate value of said property, according to Act of 1844.

Done and signed in open court, the 25th day of March, 1850, &c., &c.

Under the terms of this decree, we think the adjudication must be limited, 1st, to the property held in community; 2dly, to so much of the community property as was included and estimated in the inventory made by Samuel Bush. The date of this inventory is not given in the decree; but as there was only one made by him, there can be do difficulty as to the inventory referred to. It is impossible to go out of that inventory, because to constitute an adjudication, there must be a price fixed by the Judge, and no price is fixed in this decree, except the estimate in Bush's inventory.

We conclude, therefore, that the plaintiff is entitled to relief as to the property not included within the double limitation above mentioned; and it remains to be considered, whether the action can be maintained as to the property, which is included.

After a careful consideration of the provisions of the Code of Practice, we are of opinion that the petition does not exhibit a case for an action of nullity, touching that portion of the property now under consideration, even supposing that the allegations of the petition are proved. Let it be observed, that there

is no charge of fraud or lesion, or other matter that would make it against good conscience to enforce the decree. The charge is the inobservance of formalities in the proceedings anterior to the decree. The Code of Practice prescribes, in the chapter on nullity of judgments, the causes for which this nullity may be demanded in an action, and in a subsequent chapter, it provides for a rescission of judgments. The Article 615, as it originally stood, opened a very wide door in favor of minors. It provided, that a judgment rendered against a minor may be rescinded, if such minor show either that his case has not been well defended, or that he has been aggrieved by such judgment. But this article was amended by the Statute of 1826, which declared that "it shall not be taken or construed to imply the nullity of a judgment where a minor has been regularly represented in a suit according to law."

Applying these provisions of the Code of Practice, as now amended, to the case before us, we find in them no authority to annul this judgment, by reason of such informalities as occurred in this case, in which the minor was regularly represented. If remediable at all, they were remediable by appeal.

The plaintiff relies on the case of *Harty* v. *Harty*, 8 New Series, 518, in which an adjudication to the surviving spouse was annulled, on the ground that the formality of taking an oath by the members of the family meeting did not appear to have been observed. But this case arose before the amendatory Act of 1826.

We have already noticed the absence of any charge of fraud or lesion, or other matter that would make it against good conscience to maintain the judgment, and which could bring the case within those equitable principles, which it has been said exist, and may be enforced by courts independently of the textual provisions of the Code.

With regard to the special mortgage, we think it sufficient to say, that it is not alleged that the property so mortgaged is an inadequate security, nor that the mortgage is not valid against the mortgagor and third persons; and there is, therefore, no equitable reason to set it aside. The object of a family meeting, and a judicial order in such case, is to protect the minor. When the minor comes of age, (which is the plaintiff's case,) and has capacity to judge for himself whether the mortgage security is ample, he ought not to be heard in the prayer to burden the property of his parent with a general mortgage, when the existing mortgage is ample, simply because the preliminary steps in family meeting may have been irregular. Upon this ground alone then, independently of any other consideration, the judgment authorizing the substitution of the special mortgage, ought not to be disturbed.

With regard to the proposition of the appellant, that the will of his wife vested in him, immediately at her death, a complete title to all the estate of of his wife, subject only to the condition that he should pay for it at a reasonable estimate, we are inclined to consider it untenable; but we think the question arising under her will, and the application of the Act of 1844, to the rights of these parties, will be more properly considered in the controversy now pending upon the settlement of *Ferrier's* accounts, and which has not yet reached this court. A reservation will accordingly be made in our decree.

It is therefore decreed, that the judgment of the District Court be reversed. It is further decreed, that the judgment of adjudication in the petition mentioned, rendered by the District Judge sitting for the parish of Point Coupée, and signed on the 25th of March, 1850, conferred no title upon the said *Au-*

*guste Ferrier*, save only for the share of his deceased wife, *Delphine Porche*, in the community property described as such in the inventory made by Samuel Bush, notary public, under date of 21st June, 1849, whereof a copy is of record in this suit.

It is further decreed, that there be judgment in favor of the defendant upon so much of the petition as demands the nullity of a judgment rendered by said District Judge, on the 8th day of June, 1850, authorizing the substitution by said *Auguste Ferrier*, of a special in lieu of a general mortgage, of which judgment a copy is of record in this cause.

It is further decreed, that the costs of this suit in the court below, be paid by defendant, *Auguste Ferrier*, and that the costs of the appeal be paid by the plaintiff.

It is further decreed, that the present judgment is made without prejudice as to any question arising, or rights acquired under the will of *Delphine Porche*, or the Statute of 25th March, 1844, entitled, an Act relative to community property.