NICHOLLS, J.
The plaintiffs in this suit are Mrs. Alice Depew, widow of Jacob C. Lyons, and Jack Clifford Lyons. They al *223 leged that they were the true and lawful owners of certain described property, together with all the buildings and improvements. That the title of said property was then vested, one undivided fourth in petitioner Jack Clifford Lyons, as one of the two sole heirs of the late Jacob C. Lyons, and three undivided fourths in petitioner Mrs. Alice I). Lyons, by virtue of the community of acquets and gains between her and her said iate husband, Jacob C. Lyons, as hereinbefore mentioned, and by virtue of the adjudication to her of the interest (one undivided fourth) of her minor child, Alice Elizabeth Lyons, in said .property by judgment of the civil district court, signed January 23, 1908, rendered in the matter of the succession of said late Jacob C. Lyons, No. 79,001 of the docket of said court, a certified copy whereof has been registered in the conveyance office of this parish in Conveyance Book 216, folio 445.
That, by written agreement filed as part of the petition, the Woman’s League of New Orleans contracted to purchase from petitioner, for the price and sum of $15,000, payable $4,000 cash, and the balance in 10 equal installments, payable 1, 2, 3, 4, 5, 6, 7, 8, 9, iind 10 years after date, with interest at the rate of 7 per cent, per annum; the whole as appears by the said written agreement dated November 12, 1907, filed for reference.
That on March 17, 1908, they tendered a good and legal title to said property, free .and clear from all incumbrances, to said Woman’s League of New Orleans, through its president, Miss Charlotte B. Elliott, the whole as more fully appears by the annexed proposed act of sale of said property, duly signed by' petitioners, with all proper certificates thereto showing that the title of petitioner to said property then and was at the time of said tender free and clear from all incumbrances, and as more fully appeared by the procés verbal of tender executed by Benjamin Ory, notary public in this city, in presence of two witnesses, annexed and filed for reference.
That they and their authors were then, and had been for over 10 years, in full, quiet, public, undisturbed physical and corporal possession of said property, and that the refusal of said Woman’s League of New Orleans to comply with its agreement of purchase was without any good and legal cause or reason whatsoever. That they were then, and had been ever since the 1st day of February, 1908, ready to deliver to said purchaser both the legal title and the physical possession of said property; that on February 13, 1908, the said Woman’s League of New Orleans peremptorily and unconditionally refused to take title to said property, and to carry out their agreement of purchase hereinbefore mentioned; that this refusal, as hereinbefore mentioned, was without just and legal cause, and petitioners were entitled to a specific performance of said agreement of purchase notwithstanding such refusal.
In view of the premises, the annexed written agreement of purchase, and the annexed act of sale and tender thereof, together with all the certificates annexed thereto being considered, petitioners prayed that, the Woman's League of New Orleans be cited, and, after due proceedings had and legal delays, that there be judgment, in favor of petitioners and against the said Woman’s League of New Orleans, to comply with its adjudication within a delay to be fixed by the honorable court, and that on default thereof there be further judgment herein against said Woman’s League of New Orleans for the full amount of the purchase price of said property, to wit, the sum of $15,000, less the sum of $1,000 paid by said Woman’s League of New Orleans to petitioners on account of the purchase price aforesaid, with legal interest on said sum of $14,000 from *225 judicial demand until paid; that the described property be thereafter sold by the civil sheriff of this parish to pay and satisfy the judgment thus rendered against it, together with interest thereon as aforesaid, and all costs. They prayed for all other requisite and necessary judgment and decrees in the premises, and for general and equitable relief. ■
Annexed to and accompanying the petition was the following instrument:
“Agreement to Purchase.
“We, the Woman’s League of New Orleans, a corporation duly organized under the laws of Louisiana, hereby agree to purchase for the sum of fifteen thousand ($15,000.00) dollars, and the widow and heirs of Jacob O. Lyons, hereby agree to sell for said amount, the property, with all improvements thereon, No. 1115, Prytania street, between Calliope and Clio and bounded by St. Charles avenue, now occupied by the New Orleans Free Library, said property consisting of a three-story brick building on lot measuring about eighty-two feet on Prytania street, by a depth of one hundred and twenty feet more or less.
“The terms to be four thousand ($4,000.00) dollars cash, balance in notes of equal amounts payable in one, two, three, four, five, six, seven, eight, nine and ten years, with interest at the rate of seven per cent, per annum, interest on all of the notes to be paid annually, the maker of said notes to have the privilege of taking up said notes at any time before maturity by paying the accrued interest thereon.
“It is understood between the parties that the one thousand ($1,000) dollars deposited, by the proposed purchaser is earnest money, and should the sale fall through by any fault of the vendor the one thousand ($1,000) dollars shall be returned to the purchaser with an additional one thousand ($1,000) dollars, according to law. It is also understood between the parties that the sale shall be completed within ninety days from the date hereof, apd that the rents shall be collected by the vendor up to the day of signing of the act of sale. The taxes for 1907, both city and state, will be paid by the vendor.
“New Orleans, November 12th, 1907.
“[Signed] Alice D. Lyons,
“Per W. G. Depew.
“[Signed] Charlotte B. Elliott, “Per Woman’s League.”
The defendant answered. After pleading the general issue, it admitted that by written agreement dated November 12, 1907, it contracted anil promised to purchase from plaintiffs the property described in the written agreement and promise of sale which was annexed, but it averred that the title to said property as offered by plaintiffs was defective, and the said property did not belong exclusively to them, but was partly the property of the minor child of Mrs. Alice D. Lyons, one of the plaintiffs. That the manner in which the said plaintiff pretends to have acquired the share and interest of her said minor child in said property by adjudication of the same to her is illegal and invalid, and has produced no legal divestiture of the rights and ownership of said minor. Respondent averred further that the undivided portion of the said plaintiff in the property is still affected and incumbered by the legal mortgage in favor of her said minor child. And now assuming the character of plaintiff in reeonvention, respondent averred that the aforesaid promise of sale of November 12, 1907, provides that the $1,000 deposited by respondent is earnest money, and that, should the sale fall through any fault of the vendor, the said $1,000 shall be returned to the purchaser, with an additional $1,000, according to law.
That it is by the fault of the said plaintiff that the sale had failed, because she could have procured a legal disposition and divestiture of her said minor child’s rights in. the said property, and therebj' been able to give respondent a valid title to the same.
Wherefore respondent prayed that the plaintiffs’ suit be dismissed at their cosh And respondent prayed further for j udgment in its favor condemning plaintiffs to pay it the said sum of $1,000 with interest according to law. And respondent prayed'for all general and equitable relief.
The district court rendered judgment re- . jecting plaintiffs’ demand for specific performance, and further adjudged and decreed that defendant, the Woman’s League of New Orleans, do have judgment against plaintiffs, Alice Depew, widow of Jacob C. Lyons, and *227 Jack Clifford Lyons, for the sum of $1,000, with legal interest thereon from November 13, 1907, until paid, and costs of suit to be paid by plaintiffs in solido.
It was admitted on the trial that Jacob O. Lyons at his death left surviving him as his sole and only heirs only two children, issue of his marriage with Miss Alice D. Lyons; that they were named Jack Clifford Lyons, of age at the time of said admission, above 21 years of age, and Elizabeth Lyons, at that time about 10 years of age. The plaintiff Mrs. Alice D. Lyons has appealed.
In the Supreme Court, the defendant and appellee has answered the appeal. It represents that the judgment appealed from is erroneous in the respect that it decides that the defendant is not entitled to the earnest money stipulated in the promise of sale, because the plaintiffs were willing and offered to execute an act of sale of the property mentioned in the promise of sale though the title thereof was defective. Defendant prayed that the judgment be reversed in that respect, but affirmed in every other respect, and that there be judgment against the plaintiffs and appellants in favor of respondent according to law for the earnest money stipulated in the provision of sale.
The district judge assigned the following-reasons for the judgment:
“The record shows that the property in suit was acquired by Jacob O. Lyons during the community of acquets and gains existing between him and his wife, Alice Depew. At his death he left surviving him his said wife and their two minor children, Jack Clifford Lyons, now a major, and Alice Elizabeth Lyons, a minor now 10 years old. The respective interests of said parties in said property, therefore, were for Mrs. Lyons one undivided half, for Jack Clifford one undivided fourth, and for the minor one undivided fourth.
“Jacob C. Lyons’ succession was duly opened, and among the proceedings therein had there appears. q petition ■ of Mrs. D. A. Lyons, individually and as the duly qualified tutrix of her minor child, Alice Elizabeth, averring that she is owner in common with said minor of sundry movables and immovables (among the latter the property in question), and that ‘she is desirous of having the share, portion, and interest of said minor’ in said movables and immovables adjudicated to her at the price of estimation and value set forth in the inventories thereof of record. The prayer of her petition is that a family meeting be convened ‘to determine whether or not said adjudication is to the interest and advantage of said minor.’
“The family meeting convened in accordance with said petition, declared that the adjudication would be to the interest of the minor, and recommended that it be made for the aggregate price of $39,710.67 as per the estimate of the experts appearing in the inventories. Thereupon a decree of adjudication was rendered from which the following extract is taken as bearing on the matter at issue.
“ ‘On the petition of Mrs. Alice D. Lyons, the mother and natural tutrix of the minor, Alice Elizabeth Lyons, to have the latter’s undivided interest in certain property held in common between said minor and said natural tutrix adjudicated to the said Mrs. A. D. Lyons, considering the deliberations of the family meeting in behalf of said minor held before Benjamin Ory, notary public, on January 20, 1903, the order on which said family meeting was held and the proees verbal of said family meeting herein filed:
“ ‘It is ordered, adjudged, and decreed that the deliberations of said family meeting be approved and homologated, and accordingly,
“ ‘It is further ordered, adjudged, and decreed that the one undivided fourth interest of said minor, Alice Elizabeth Lyons, in the property hereinafter described, and held in common by her with her said mother, Mrs. A. D. Lyons,, be and the same is hereby adjudicated to said Mrs. A. D. Lyons, her mother, at the price and sum hereinafter mentioned, being the price of the estimation fixed thereon by the experts appointed by the court and set forth in the inventoijy herein.’ * * * ■
“(Here follow the description and estimation of several items of property, inclusive of the realty in suit.)
“ ‘It is further ordered, adjudged, and decreed that the property so adjudicated remains specially mortgaged to secure the payment of said price of adjudication and the interest thereof.’
“On the day following the rendition of that judgment, Mrs. Lyons, with a view to relieving her property of the general mortgage resulting from the tutorship of her minor child, and of the special mortgage consequent upon the adjudication aforesaid, presented to the court an account showing that the amount of the rights of said minor was $35,215.38, which account had been submitted to and approved by the undertutor, and prayed that the minor’s rights be liquidated and fixed at the amount stated. Her prayer having been granted, she next offered to specially mortgage, in order to secure the minor’s rights liquidated as aforesaid, a square' of ground and other real estate which formed part of the .property owned in common with, said minor and was included in the judgment of adjudication.
*229 “Upon the recommendation of the family meeting convened at her request, and in accordance with the report of the experts appointed by the court that the property offered to be specially mortgaged exceeded by at least 25 per cent, the liquidated rights of the minor, the court authorized the special mortgage to be executed, and thereafter, upon proof of its recordation in the mortgage office, ordered the annulment and erasure from the books of said office of the general mortgage resulting from the confirmation of Mrs. Lyons as tutrix and of the special mortgage recognized by the judgment of adjudication.
“Opinion.
“Defendant contends in the first place that the adjudication should have been of the whole property held in common, and not merely of the minor’s share therein, and that the special mortgage securing the payment of the price of adjudication should have borne upon the whole property, and should not have been restricted by the decree of adjudication to the minor’s interest. That contention is well founded. Article' 343 of the Revised Civil Code, as amended by Act No. 50, p. 83, of 1900, reads: ‘Whenever the father or mother of a minor has property in common with him, they each can cause it to be adjudicated to them, either in whole or in part, at the price of an estimation made by experts appointed by the judge and duly sworn, after a family meeting, duly assembled, shall have declared that the adjudication is for the interest of the minor, and the undertutor shall have given his consent thereto, and in this case the property so adjudicated shall remain specially mortgaged for the security of the payment of the price of the adjudication and the interest thereof.’
“The pronoun ‘it,’ following the verb ‘cause’ in said article, clearly refers to property in common with him, and it is the property (in common) so adjudicated which must remain specially mortgaged to secure the payment of the price of adjudication. That is also apparent from the French text of the Civil Code of 1825, art. 338:
“ ‘Lorsque le pore ou la mSre d’un mineur a des biens en commun avec lui, il peut se lesfaire adjuger, en tout ou en partie; * * * et dans ce cas, les biens ainsi adjugés demeureront hypothéqués spécialement.’ * * *
“Besides, the precise issue was determined by the Supreme Court in Massey v. Steeg, 12 La. Ann. 78, 79, in these words:
“ ‘It is contended by the appellants that the minor’s right of mortgage in this case should be restricted to the undivided half, as their share of the property adjudicated to their father. We do not think so. The law expressly declares that the property held in common— not the undivided half thereof — may be adjudicated to the surviving parent, and, so adjudicated, shall remain specially mortgaged for the security of the payment of the price of adjudication.’
“It is argued, however, by counsel for plaintiffs, that lex neminem cogit ad vana, and that it is a vain thing to adjudicate to the parent that part of the property in common of which he is already the owner, and that all that he needs to acquire is the share of his minor child.
“The reply to that argument is that the privilege granted to the parent by article 343 ‘is in derogation to the general rules established for the protection of those who, from want of age and experience, are supposed to be incapable of guarding their own interest, and should be restricted within the limits of the provisions under which it is awarded.’ Harty v. Harty, 8 Mart. (N. S.) 518.
“In other words, when a statute confers an exceptional privilege particularly as regards the acquisition of minors’ property, its provisions must be strictly followed. To the suggestion that some of those provisions are useless, the reply is: ‘Ita lex scripta est.’
“Hence, it being so written in article 343, the parent who wishes to acquire his minor child’s share in the property held in common must cause the whole property to be adjudicated to him, or else he takes nothing by the adjudication.
“But, says counsel for plaintiffs: ‘Whenever a judgment has been rendered by a competent court adjudicating (as was done here) community property to a surviving spouse, and neither fraud nor spoliation is alleged or shown, the correctness of the judgment cannot be inquired into collaterally.’ And he cites Succession of McClean, 23 La. Ann. 17; Sanders v. Carson, 2 La. Ann. 393; Orr v. Thomas, 3 La. Ann. 582; Ferrier v. Ferrier, 9 La. Ann. 428; Succession of Hebert, 4 La. Ann. 77.
“In those cases the collateral attack was upon the proceedings leading up to the decree of adjudication on the ground that they were irregular and informal; whereas here it is the effect to be given to the decree itself which is questioned, it being argued justly, in my opinion, that there is no law authorizing the transfer and divestiture of minors’ property in the manner stated, and hence the judgment of adjudication falls short of its purpose.
“Moreover, as the defendant cannot be compelled to accept a title suggestive of litigation, it undoubtedly has the right to show. that the decree of adjudication is liable to a direct attack by the minor upon attaining the age of majority.
“It must be said, however, in justice to plaintiffs’ counsel who obtained the said decree, that he is not alone in his erroneous interpretation of article 343, and that other experienced probate lawyers have given their sanction to judgments adjudicating only the minors’ share of the common property. His suggestion that, if the court be correct in the views herein expressed, many titles to real estate in New Orleans will be endangered, has strongly appealed to the court to arrive at a. different conclusion.- But this is not a case for the application of the maxim, ‘Communis error facit jus.’ The decision in Massey *231 v. Steeg above referred to was rendered more than 51 years ago, and has never been overruled, so far as I am aware. And a reference to Flemming’s Formulary — a work carefully compiled from the pleadings of most expert pleaders at the bar — will show that the Supreme Court’s construction of article 343 in that c"se has been p-nierally accepted and followed. (Pages 124-12G.)
“The court being of opinion that the title tendered to defendant is defective in the particular stated, it becomes unnecessary to consider the other interesting issue raised by defendant as to the validity of the special mortgage given b^ Mrs. Lyons in lieu of both the general mortgage resulting from her confirmation as tutrix a11 ’ the special mortgage to secure the price of adjudication.
“As to the reconventional demand, defendant is entitled to recover under it no more than the $1,000 deposited as earnest with in erest. Article 2463, Rev. Civ. Code, which the parties evidently had in view in writing the stipulation regarding the payment of an additional $1,000. says, ‘But if the promise to sell has been made with the giving of earnest, each of the contracting partios is at liberty to recede from the prom ise, to wit, he wh-o has given the earnest by for feiting it, and he who has received it by returning the double.’ Therefore it is only when the vendor has arbitrarily receded from the promise that he can be made to return double the earnest. So far from receding from the promise to sell, plaintiffs are even now insist ing upon its fulfillment. It would be strange justice indeed to enforce against them the penalty provided in article 2463 simply because, in the opinion of the. court, their title to the prop-' orty is not such as defendant can be compelled to accept.
“It is therefore ordered, adjudged, and decreed that plaintiffs’ demand for a specific performance be rejected, and that defendant, the Woman’s League of New Orleans, have judgment in reconvention against plaintiffs Alice Depew, widow of Jacob C. Lyons, and Jack Clifford Lyons, for the sum of $1,000, with legal interest thereon from November 13, 1907, untd paid : all costs of suit to be paid by plaintiffs in solido.”
In the brief filed on behalf of the plaintiffs’ counsel, copying article 343 of the Civil Code, they say:
“Whenever the father or mother of a minor has property in common with him they can cause it to be adjudicated to them either in whole or in part,” etc.
“In whole” when minors hold the property in common with the father or mother; in part when majors and minors hold the property in common with the father or mother.
Such has been the interpretation of the article and the practice of lawyers from time immemorial. Whenever the co-owners of the father or mother were all minors, all the property was adjudicated as an easy operation; and when some of the co-owners were majors and others minors, then only share interest and “part” of the minor or minors was adjudicated. It could not be done otherwise, for the law did not and could not adjudicate the “part” of the majors. To say that only the “whole” property and not a “part” can be adjudicated is to speak in contradiction and disregard of the letter of the article which authorizes the adjudication of the property “in whole or in part.”
But the defendant says that the article continues, “and in this case the property so adjudicated shall remain specially mortgaged,” etc. They argue that the word “property” means the “whole property,” but the meaning of this word must be gathered from the whole article. It evidently means the “property in whole or in part so adjudicated shall remain specially mortgaged,” etc. Why put upon the word an interpretation which would require more property to guarantee the price of adjudication than the property itself adjudicated, or more than the minors own? Besides, such an interpretation would restrict and limit the right of adjudication to cases only where the co-owners were all minors. For, in all cases where there would be one major, the parent could not take advantage of the article, because the family meeting could not recommend the adjudication of the major’s part, nor could the court adjudicate it.
The spirit of the law was to enable either parent of the minor to acquire the “part” or interest of the minor child or children in property held in common at a fair valuation, in order to avoid the cost of a partition and the differences to which joint ownership gives rise.
*233 “The adjudication of the common property to the surviving parent is not founded upon the narrow consideration of pecuniary advantage, but, as has been well observed by counsel, in the greatest good of the children. It enables the parents to continue the former business of the community, and secures to the children their home with all its associations.” Succession of Hebert, 4 La. Ann. 77 (78).
As early as 1849, in the Succession of Hebert, 4 La. Ann. 77, Chief Justice Eustice, speaks of the application of the father “to have the interest of his children in the property adjudicated to him,” etc.
In 1854, in the case of Ferrier v. Ferrier, 9 La. Ann. 428 (432) the judgment of adjudication read:
« * * * ^nd the share of the minors, Leon, Rosa, and Emma Perrier, in the property held in community between the said Auguste Ferrier and their mother, Delphine Porche, be adjudicated to the said Auguste Perrier,” etc.
Although this judgment was vigorously assailed on four grounds, it did not occur to the plaintiff’s attorneys to attack it on the ground set up here, that the “whole” and not a “part” of the property could be adjudicated for the reason, no doubt, that the bar interpreted article 343 as authorizing the adjudication of the “shares of the minors.”
The Supreme Court maintained the adjudication “for the share of his deceased wife, Delphine Porche, in the community property,” etc.
In the Succession of Lydia Robinson, 23 La. Ann. 17, the minors’ share of the community was adjudicated to their natural father at an estimated value of half of the community property. Held:
“A judgment of adjudication cannot be attacked collaterally, there being no fraud nor spoliation shown.”
“The 'judgment of adjudication having been rendered by a court of competent jurisdiction, and no fraud or spoliation being shown, its validity cannot be inquired into collaterally.” Sanders v. Carson, 2 La. Ann. 393 (395); Winchester v. Cain, 1 Rob. 421.
Chief Justice Bermudez wrote the following syllabus in the case of Ealer v. Lodge, 36 La. Ann. 115:
“Rights of the creditors of the community cannot be defeated by adjudication of the share of minors in the common property to the surviving spouse,” etc.
Article 343 has always been literally interpreted.
Thus it has been held that movable property be adjudicated, although the article provides that “the property so adjudicated shall remain specially mortgaged,” and we know that movables cannot be mortgaged. Massey v. Steeg, 12 La. Ann. 78.
In the cases of Harty v. Harty, 8 Mart. (N. S.) 518, and Berteau v. O’Brien, 2 La. Ann. 162 (163), it was held that not only community property but property held by any title in common by the parent and his minor child, could be adjudicated. But the defendants point confidently to the ease of Massey v. Steeg, 12 La. Ann. 78. Upon page 79 we copy the following language:
“The law expressly declares that the property held in common — not the undivided half thereof —may be adjudicated to the surviving parent, and so adjudicated shall remain specially mortgaged for the security of the payment of the price of the adjudication.”
The syllabus reads as follows:
“When such adjudication takes place, the special mortgage in favor of the minor, resulting from the adjudication, attaches to such of the property adjudicated as is susceptible to mortgage. The right of mortgage in this case is not restricted to the individual share of the minors, but the whole property remains specially mortgaged for the security of the payment' of the price of the adjudication.”
With all due respect, the court did not quote the law7 in full, and both its language and the syllabus are obiter dicta. The law does not declare that “the property held in common may be adjudicated.” But it expressly says that the property in common may be adjudicated “in whole or in part.”
The question before the court in that case *235 was not whether the “whole” or a “part” of the property could be adjudicated; therefore, whatever the court said on that subject was “obiter.” The whole property has been adjudicated, because all the co-owners were minors.
The syllabus in those days was not made by the court, and therefore it was not responsible for it. But we will show that the language used by the court was not necessary to the decision of the case, and, therefore, is also obiter.
The plaintiffs, William Masset et al., had obtained a judgment against Steeg. They could not execute this judgment against Steeg, because there was a general mortgage on his property as tutor of his children, and a legal mortgage resulting from the adjudication to him of the immovables of the community, valued at $2,000, and movables valued at $800. The plaintiffs asked that the minors’ claims against the property of their father be reduced to one-half the price of the immovables, say -$1,000, and be restricted to the half of the immovable property adjudicated.
The court refused, on the ground that movables as well as immovables could be adjudicated; and, on the second ground, that the whole property under the law, and not only one-half thereof was adjudicated, and that the whole property remained mortgaged to secure the price of adjudication. But this second ground was not necessary to the decision of the case, because the court, in concluding, gave the true and incontestable reason as follows:
“But, conceding it to be as contended for, still it is difficult to perceive in what manner such restrictions could possibly inure to the benefit of the appellants, inasmuch as the law creates in favor of the minor a tacit, independently of the special, mortgage on the property of his natural tutor, from the day on which the tutorship devolved upon the latter, as security for his administration and the responsibility resulting from it. Civ. Code 1838, art. 354; Gonsoulin v. Migues, 5 La. Ann. 565.”
In a subsequent ease decided in 1884, the question came squarely for decision before this court, viz.: Upon' what portion of the property adjudicated rests the privilege of securing the price of adjudication — upon the whole property, -or upon the part adjudicated?
And the court decided that if affected the “part” adjudicated. Opinion Book, 58, p. 557—A. & L. Werner v. Succession of Anton Werner, No. 9087 (Sup. Ct. La., May 5, 1884, unreported), Mr. Justice Todd:
“Anton Werner, the father of plaintiffs, was twice married. The plaintiffs are the issue of the first marriage. After the death of his first wife he was confirmed as natural tutor of his minor children, and caused the community property to be adjudicated to him, giving' a special mortgage on the property which was immovable to secure the minors. He then contracted a second marriage, the issue of which was four children, who are still minors and are represented in this suit by a dative tutor; Anton Werner and his second wife being both dead. The controversy in the case is with respect to the proceeds of the property specially mortgaged, as stated, to secure the children (of the first marriage) under the adjudication referred to. The property was sold under a proceeding to enforce the mortgage by the plaintiffs contradictorily with the tutor of the minor heirs of the deceased. The tutor asserts a preference on the proceeds to the amount of $1,000 by reason of the privilege ‘in favor of children left in necessitous circumstances, and from a judgment sustaining this demand the plaintiffs have appealed. The adjudication of the common property of the first marriage to the father of the plaintiffs was in the nature of a sale, at least to the extent of the plaintiffs’ half interest in the property. This interest was conveyed to the father for a price which he bound himself to pay. There was wanting no requisite of a sale to the extent stated. Of course, if it was a sale by operation of law, it super-induced the vendor’s privilege, but it is too plain for argument that such privilege must be measured by and confined strictly to the thing sold, and cannot exceed the price of it. The entire property was embraced in the adjudication, but one undivided half of this property belonged to the father as the survivor of the community, and the residue, of his minor children by right of inheritance from their mother. In contemplation of law, they sold this interest to their father, and the law created in their favor a privilege for the price, and, as this resulted from the operation of law, il needed not to be expressed or stipulated in the act of evidencing the adjudication and special mortgage accompanying it. The privilege could not, however, exist on that portion of the property already owned by the father and for which *237 he had no price to pay. It was limited to the minors’ half of the property, which, having been sold under the foreclosure of the mortgage, now operates on the proceeds of the sale. The vendor’s privilege, under the terms of the law creating the privileg'd in favor of necessitous children, outranks the latter. Hence we conclude that the plaintiffs were entitled by preference to one half of the proceeds of the property sold. Out of the other half the minor heirs must be paid their privilege, if sufficient; that is, this remaining half of the proceeds must be their sole reliance for the satisfaction of their privilege. The surplus, if any, the plaintiffs are entitled to.”
The facts of the case were that the interest of the two minors in all the properties held in common by Anton Werner and his two minor children, Aloysius and' Louis Werner, was adjudicated to Anton Werner at the valuation placed thereon by experts — say $3,G25'; that subsequently, the rights of the two minors against their father and tutor were liquidated and fixed at $3,525, and secured by a special mortgage in lieu of the general minors’ mortgage and the mortgage resulting from the adjudication; that the only property let by Anton Werner consisted of the property specially mortgaged to A. & L. Werner; that it did not sell for an amount sufficient to pay said minors’ claims.
But, after all, to what avail is all this discussion? Are we not wrangling over words rather than over substance? A pretty edifice made up of theories and nice grammatical distinctions may be built from a critical analysis of the mere words of article 343. But its object and intention is what we must ascertain.
The practical object of article 343 was to enable the parent to have adjudicated to himself, not the whole property, for the parent already owned a part of it, but the part, the share, the interest of all the minor co-proprietors, whatever that interest might be, even though some majors might also be co-proprietors with the parent and minors. Such interpretation must be given to article 343 as will carry out that object. To limit the article to cases where minors alone are co-proprietors would be a restriction in violation of the article. Counsel argue that the lawmaker could not have intended that the whole property should be adjudicated to the parent, for the parent was already the owner of an undivided half, and he could not “buy” or have adjudicated to himself his “own property,” citing articles 495 and 2443 of the Revised Civil Code, and Banks v. Hyde, 15 La. 392, and Alderson v. Sparrow, 16 La. Ann. 227.
Defendants’ counsel urge that the words, they can cause it (the property) “to be adjudicated in whole or in part,” mean a part of the common property, but that part itself must be the common property and adjudicated as such, and not a separate part of that part of the common property, to wit, the undivided share of the minor.
They say there is nothing in the argument that the parent was himself prior to the adjudication a part owner of the property to be adjudicated to him, for the tenure of the father’s ownership after the adjudication is different from what it was before — before it was an undivided interest in the property as a whole, after the adjudication it was an interest in entirety in the specific property adjudicated. They maintain the correctness of the trial judge’s position in the ease.
In reference to the question of earnest money, counsel quote Baudry La Cantinerie, vol. 17, verbo “Sale and Exchange,” p. 56, § 92; 2 Pothier on Sales, p. 221, No. 503; 1 Duvergier, p. 153, § 140; 43 Dalloz “Rep de Leg,” p. 119, No. 332; Williams v. Hunter, 13 La. Ann. 476; and Wilberding v. Maher, 35 La. Ann. 1182-as sustaining the trial judge in the position taken by him on that subject.
In reply of this, counsel for defendant cited Demolombe, vol. 1, p. 546, No. 549; Merlin, verbo “Arrhes,” p. 95; Trolong, De la Vente, p. 174; Baudry La Cantinerie on Sale, p. 53; Freret, vol. 14, p. 115; Smith v. Hussey, *239 119 La. 32, 43 South. 902; Jefferson Sawmill v. Iowa & Louisiana Land Co., 48 South. 428, 122 La. 983; and Legier v. Braughn, 49 South. 22, 123 La. 463.
We have carefully considered this case, and are of the opinion that the judgment of the district court, except in so far as it concerned the matter of the earnest money, is correct, but on that branch of the case it is erroneous. The prayer of the appellee contained in its answer to the appeal is well founded, and it is hereby granted.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from, in so far as it decrees the defendant on its reconventional demand entitled to recover under it from the plaintiff no more than the sum of $1,000 deposited as earnest money, with interest, is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the defendant on its reconventional demand recover from the plaintiff the sum of $2,000, with interest thereon1 from judicial demand. Except as so altered the judgment appealed from is hereby affirmed.
BREAUX, C. J., dissents in part.