## No. 6240.

JOHN V. SEVIER VS. INEZ R. GORDON, WIFE, ETC.

Heirs who, when they attain majority. sue for a partition of the property of the succession, and enter into its possession, thereby .accept the succession purely and simply. They cease to be beneficiary heirs, and become personally bound for the debts of the succession.

Creditors of a succession who permit the heirs to take possession of its property without having resorted to the action for a separation of patrimony, become mere ordinary creditors of the heirs.

One who buys the interest of an heir in a succession, the administration of which has closed, and the property of which is in the possession of the heirs, does not become liable for that heir's share of the debts of the succession.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J.

*Farrar & Reeves* and *E. H. Farrar*, for plaintiff and appellant.

*Drake & Garrett*, for defendant.

The opinion of the court was delivered by

'MARR, J. James G. Gordon died in 1855, leaving five children, all minors. His succession was administered in Tensas, the parish of his domicile, first by the executor named in the will, who died in 1867, and subsequently by a dative executor, who was discharged in 1871.

In December, 1868, two of the heirs brought suit against the others for a partition; and final partition was made in January, 1870, and homologated on the third of May, 1870. The entire property of the succession consisted of the Verona plantation; and it was divided in kind, and the portions allotted to the heirs, respectively, were designated by proper description and conveyed to them.

Mrs. Inez Ruth Gordon, wife of John Gordon, one of the five heirs, brought suit for a separation of property, and recovered judgment against her husband in October, 1869, for fourteen thousand dollars, with recognition of her mortgage on all his property, dating, as to part of her demand, in January, 1861, and as to the remainder in January, 1862. Execution issued on this judgment, under which the sheriff seized the

interest of John Gordon in the estate of his father, and it was adjudicated to Mrs. Gordon in May, 1870, after the homologation of the partition.

In June, 1867, John V. Sevier brought suit against the executor of James G. Gordon, and recovered judgment, which was affirmed by this court in 1870. He attempted to enforce this judgment in the district court, in which it was rendered, and obtained an order in April, 1870, requiring the executor to sell the property of the succession for that purpose. This court decided that this proceeding in the district court was void for want of jurisdiction. 23 An. 212.

The executor filed his final account, which was homologated in May, 1871; and he was discharged, and his bond canceled. Sevier appealed from this judgment; and his appeal was dismissed in March, 1872. He then brought suit and obtained judgment, declaring the partition an absolute nullity, annulling the judgment by which the executor was discharged, and ordering him to resume the possession and administration of the property; and shortly after he obtained an order from the parish court requiring the executor to sell the Verona plantation in satisfaction of his judgment.

This court decided in the suit for nullity that the executor had been properly discharged, and that the heirs were legally entitled to the possession which they held under the partition. 25 An. 220. In the other case, the court reversed the judgment of the parish court, and decided that the succession of Gordon was closed, and that the proceeding against the person who had been executor, requiring him to sell the property, was unauthorized by law. 25 An. 231. This was but the affirmance of the decision, rendered the year before, in the suit of Fowler vs. the Succession of Gordon. 24 An. 270.

Sevier then brought this suit against Mrs. Gordon, who was a widow at that time, to recover the virile share, one fifth of the judgment, for which her deceased husband was liable as one of the heirs of James G. Gordon. He bases his action on two grounds —

First—That by purchasing, under her judgment, the individual interest of her husband in the succession, she assumed his portion of the debts of the succession.

Second—That in the answer filed by her to the rule to compel the discharged executor to sell the Verona plantation, Mrs. Gordon had, judicially and in writing, assumed to pay the virile portion of her husband.

The defendant denied the alleged liability. She plead that the matter in controversy had become *res adjudicata* by the several decisions of this court already referred to; and she specially denied " that she ever, directly or indirectly, judicially or otherwise, assumed, covenanted, or promised to pay the pretended debt asserted by plaintiff, and avers that

if any such promise, covenant, or assumpsit was ever made or filed in any proceeding by her attorney, the same was done without her consent, authority, or sanction, and against her will, and was made and done in error."

The judgment of the court below was in favor of defendant, and plaintiff appealed. His counsel have filed an elaborate brief, the purpose of which is to show that, as John Gordon was a minor when his father died, he was necessarily a beneficiary heir; that the separation of patrimony was the legal consequence; and that the creditors of the succession are entitled to be paid by preference out of the property inherited.

It is true that minors are beneficiary heirs; that beneficiary heirs are entitled to the residuum only after the debts of the succession are paid; and that they are not personally liable for the debts of the succession. It is equally true that the beneficiary heirs, when they obtain their majority, may become heirs purely and simply, and may obtain possession as owners of the property of the succession, and be liable for its debts. In this case the heirs provoked a partition, and went into possession. The succession thereupon ceased to exist; and those who were originally beneficiary heirs, because of their minority, became absolute heirs, and liable, each for his virile share, personally and unconditionally, for the debts of the succession which had not been paid.

The liability of the heirs for the debts of the succession results from their unqualified acceptance. Where the acceptance is with benefit of inventory the succession must be administered, and the debts paid in course of administration, and the beneficiary heir is not liable for his virile share, nor for any other share or portion of the debts. Where the acceptance is pure and simple the heirs are entitled to be put into possession, subject to the right of the creditors to demand an administration; and they become at once personally liable for the debts of the succession. R. C. C. 1032 to 1070, inclusive. The separation of patrimony is the means, provided by law, of preventing the individual creditors of the persons who are heirs from subjecting to their debts, to the prejudice of the creditors of the succession, the property inherited, or, vice versa, of preventing the creditors of the heirs, as such, from subjecting the property of the heirs, not derived from the succession, to their debts, to the prejudice of the individual creditors of the persons who are heirs. No such measures are required with respect to the beneficiary heir, and the separation of patrimony is not applicable to him, because he can not obtain possession of any of the property or effects of the succession until the debts are paid, and the administration closed; and his individual creditors could by no means reach the property of the succession under administration. R. C. C. arts. 1444 to 1464, inclusive.

Sevier vs. Inez R. Gordon.

The heirs have the right, at any time, to demand of the executor the possession of the succession by offering him a sum sufficient to pay the movable legacies. R. C. C. 1671. If there are claims pending in court for the money or property of the succession, the heirs may be compelled by the creditors, before obtaining actual possession, to give security for the money so claimed, or property, in suit. R. C. C. art. 1012.

The demand, by suit, of a judicial partition, was an acceptance by the heirs pure and simple, because, as beneficiary heirs, they could not have arrested the administration, nor claimed any part of the succession until the debts were paid and a residuum remained for distribution. It is the right of the creditors to demand the separation of patrimony; but this must be done within three months after the tacit or express acceptance by the heirs, (R. C. C. 1444 to 1456); and they must declare, under oath, that they believe the heir is embarrassed with debts, which they have reason to believe will absorb the effects of the succession. R. C. C. 1457.

If there could be any doubt as to the effect of the demand of a judicial partition, the actual partition, and the taking possession by the heirs of their respective shares, constituted a plain and unequivocal acceptance; and the separation of patrimony was never demanded, nor was any security required of the heirs. The consequence is that the creditors of the succession have become thereby the creditors of the heirs, each for his virile share; and they have precisely the same rights as any other ordinary creditors of the persons who are the heirs.

These principles are elementary; and it was necessary to enunciate them only to prepare the way for the consideration of the two grounds upon which the plaintiff relies.

First—By the partition made on the twenty-fourth of January, 1870, the specific part of the Verona plantation which fell to John Gordon became absolutely his property, and the legal title vested in him. It was thenceforth liable to seizure by his creditors, without distinction; and it was seized on the second of April, 1870, and sold on the sixteenth of May, 1870, at the instance of his wife, his judgment creditor, who had also a mortgage, judicially recognized.

It is true the sheriff seized and sold " the undivided interest of John Gordon in the estate of James G. Gordon, deceased, said succession property being composed of the Verona plantation, said interest consisting of one fifth of said entire succession," but this in no manner changed the relations of Mrs. Gordon to the property or to the creditors. Plaintiff had no mortgage, no lien, no privilege, no right of preference on this property, and no judgment against John Gordon, and the seizure and sale by the judgment creditor of John Gordon divested his interest, whatever it might be, whenever and however ascertained, and vested it

in Mrs. Gordon, the purchaser, to the exclusion of all other persons whomsoever.

Every personal creditor of John Gordon had the same right precisely as plaintiff had; the right to sue, obtain judgment, and seize and sell John Gordon's property. By her purchase Mrs. Gordon incurred no liability to plaintiff. She simply enforced her rights against her debtor, to the extent of the value of his property, and in no sense did she take his place as debtor of plaintiff, or as debtor of any other person.

Second—The answer of Mrs. Gordon, alleged to be a judicial confession of liability, was filed on the twenty-seventh of September, 1872, and is in these words:

" If the judgment set forth in said rule be final, respondent, under the law, elects to pay whatever portion of the debt may be due by her on said judgment, in order to save her portion of the .Verona plantation from being sold."

Too much importance has been attached to this answer. It contains no word of promise, and it is simply the declaration of Mrs. Gordon's election to pay whatever might be due by her rather than have her property sold. The only motive was to save her property, in the event that it was liable, by paying the debt for which she supposed it might be sold. But the property, clearly, was not liable. While it belonged to the succession it was liable for the debts of the succession. When it went into the possession of the heirs, in virtue of the partition, it became their property, and was liable for all their debts, respectively. It could no longer be pursued by the creditors of the succession as the property of the succession, because the succession had ceased to exist. If Mrs. Gordon had known that the property was not legally bound, there would have been no occasion, no motive for any such election, and if she had unconditionally promised to pay the debt, believing that her property was bound for it, there would have been such error in the motive as would have made the promise void.

If this answer could be interpreted to be, what it certainly is not by its terms, an assumption of the portion of the judgment for which John Gordon was liable, it would be without effect, for two reasons:

First—Because there could have existed no other consideration for this assumption than the erroneous belief that the property was bound and would be sold in satisfaction of the judgment.

Second—Because Mrs. Gordon was a stranger, a third person, not a party to the contract or the judgment; and by the act of 1858, Revised Statutes, section 1443, the promise to pay the debt of another must be in writing, "signed by the party to be charged, or by his specially authorized agent or attorney in fact." The attorney at law employed to defend his client is not such a " specially authorized agent or attor-

Sevier vs. Inez R. Gordon.

ney in fact," and there would be no occasion for his professional services if the debt sued for was to be assumed and paid by his client.

We do not think that the attorney of Mrs. Gordon intended to bind her to pay the debt; and we are satisfied he had no such power. The election to pay in money, in the event of liability, rather than have property sold, is not an assumption and promise to pay absolutely. It is contingent upon liability, and that liability did not exist. Mrs. Gordon was not the heir of her husband. She was his creditor for a sum exceeding the value of his entire inheritance, and she was under no obligation, legal or moral, to pay his debts.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed with costs.

Spencer, J., recused.

## CONCURRING OPINION.

EGAN, J. Where heirs accept with benefit of inventory administration is proper, and the law directs the judge so to order. I am not prepared, however, to subscribe to the doctrine that if there be no administration the heirs can not be sued directly and that they are not bound to any extent. I think they may be so sued and held liable to the extent of the value of the property inherited. They may, however, be discharged from all personal liability by surrendering to the creditors the property of the succession. It is only during the term for deliberating that the heir can not be sued. I concur, however, in the decree in this case and in the opinion generally.

## ON REHEARING.

The opinion of the court was delivered by

EGAN, J. It is argued that acceptance of a succession with benefit of inventory has the same effect as the action of separation of patrimony. We do not think so. The action for separation of patrimony of the ancestor from that of the heir allowed to the creditor from its very nature has no application except in case of the unconditional acceptance by the heir, and to avoid the consequences of the property derived from the succession being so mixed with that acquired otherwise that it may become liable to incumbrances or debts of the heir to the detriment or exclusion of the creditor of the ancestor. This action is only allowed within a limited time. The original acceptance with benefit of inventory did not prevent the subsequent unconditional acceptance in the present case, and the creditor did not resort to the action of separation.

The rehearing is refused.