(54 South. 973.)

No. 18,135.

FAHEY et al. v. FAHEY.

(April 10, 1911.)

*(Syllabus by the Court.)*

1. MINORS—PARTITION — INTERESTS OF MINORS.

The courts cannot recognize or give effect, as against minors and as against judicial averments and admissions by deed, to verbal understandings concerning the partition of real estate in which such minors are interested.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 42.*]

2. MINORS—VERBAL UNDERSTANDINGS—RATIFICATION BY MINORS.

Minors who, attaining majority or being emancipated, sell real estate which, on the face of the record, appears to have been purchased for them, and with their money, by their tutrix, cannot be held thereby to ratify a verbal understanding said to have been had years before, between their tutrix and the major co-owner of the property, whereby her purchase was to be regarded as an act done in the effecting of a partition, involving other real estate, and of which understanding the minors had no knowledge.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 70.*]

3. PARTITION (§ 7*)—LAND OF MINORS—SALE.

Where, in what purports to be a partition proceeding, the interest of a minor alone in the property is sold at private sale, the purchaser acquires no title. The law requires a sale, whether public or private, to effect a partition of the property in which a minor is interested, to be made of the whole property, and this whether the purchaser be the co-owner or a third person. The decisions in Gallagher v. Lurges, 116 La. 755, 41 South. 60, and Moore v. Gulf Refining Co., 124 La. 609, 50 South. 596, are affirmed.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 18; Dec. Dig. § 7.*]

4. PRESCRIPTION—SALE—ATTACK ON SALE—LIMITATIONS.

The prescription of five years against attacks on partition sales is not good as against a sale of the interest of a minor alone, in property held in common with others, since in such case there is no sale authorized by law.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 390–398: Dec. Dig. § 72.*]

Breaux, C. J., and Land, J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Charles A. O'Neill, Acting Judge.

Action by John K. Fahey and others against Mrs. Elizabeth M. Fahey. From the judgment, plaintiffs appeal. Reversed and rendered.

Gilbert L. Dupre, for appellants. Lewis & Lewis, for appellee.

Statement of the Case.

MONROE, J. John K., and Felix A., Fahey, and their sister, Mrs. Sallie G. Fahey, widow of Eckhart, sue, as the heirs (through their deceased father) of their grandfather, John Fahey, to recover from their aunt, Mrs. Elizabeth Fahey, wife of T. Franklin, an undivided half interest in certain lands, which interest, as they allege, was sold during their minority by their natural tutrix to the said aunt; the grounds of their attack upon the sale in question being, in effect, that the law was not complied with, in that the proceeding leading to the sale purported to be a suit for a partition, but that its real purpose and effect was to bring about a sale of their interest in the property to their aunt. They allege that defendant is a possessor in bad faith, and pray for judgment decreeing them the property, with rents and revenues. Prior to the institution of

the suit, the defendant had mortgaged the entire property to the Opelousas National Bank, and had imposed a second mortgage upon it in favor of the Washington State Bank; and after the institution of the suit the property was sold by the sheriff, under a judgment obtained by the Opelousas Bank, and bought in by the Washington Bank, with full notice of the claim here set up. In that situation the defendant appears to have considered that she was without interest, and, making no appearance, a judgment was entered against her by default. The Washington State Bank, however, intervened (1) affirming the validity of the sale of the plaintiffs' interest in the property in question, and of its own title; (2) alleging that plaintiffs have ratified said sale and are estopped to attack it; (3) alleging that its author was a possessor in good faith and was entitled to reimbursement for certain improvements placed by her on the property, and that it is subrogated to her rights. It then undertook to call the Opelousas Bank in warranty, but subsequently dismissed the call, with reservation of its rights. The facts disclosed by the evidence are as follows:

John Fahey died in (say) January, 1889, leaving his daughter, the present defendant (who was then Mrs. Walker), and the three plaintiffs (children of a predeceased son), as his sole heirs; John K. Fahey being then a little over six years, Sallie less than four years, and Felix less than two years old. The estate left by their grandfather consisted, in part, of a plantation, which we will call "Melwood," on which he lived, and which was inventoried as containing 125 acres, more or less, together with 480 acres, more or less, of adjacent land, the whole valued at $4,000; and there was also inventoried, as part of the estate, a "plantation" called the "Dunbar Place," containing 220 (or, perhaps, 270) acres, and valued at $2,500. There seems to have been an informal partition be-

tween the minors (represented by their mother, who qualified as their tutrix) and their aunt of the movable property; and about three months after the opening of the succession a petition was presented to the court, in the name of the tutrix, representing that the parties interested desired to effect a partition of the lands constituting Melwood plantation; that the property could not well be divided in kind; that it would be to the interest of the minors that it be sold at private sale, and that a family meeting should be convened to consider the question. And a family meeting was convened, and recommended that the interest of the minors in said property be disposed of at private sale for $2,250, which recommendation having been approved by the court, the sale was so made on May 1, 1889, to Mrs. Walker, who paid the price to the tutrix in cash. In the meanwhile it appears that it had been discovered that the succession had no title to the Dunbar place, though John Fahey had been in possession of it for several years, and his son (plaintiffs' father) had lived on it before moving to Kansas; the facts in that connection being that the place had been sold a number of years before, by John Fahey, to Thomas and Robert Dunbar, and that it had been virtually retroceded by them, but that no deed of conveyance had ever been executed. Defendant's then husband, Dr. Walker, however, obtained a title from the Dunbars, on payment of $500, and he also bought a judgment which had been obtained by Richard Flower & Co. against Thomas Dunbar for $285.71, with interest at 8 per cent. from February 1, 1879, and which was recorded as a judicial mortgage against Dunbar's interest in the property. And thereafter he (Dr. Walker) sold said property to the tutrix of the plaintiffs (acting in her capacity as such) for the recited consideration of $1,790.75, which amount was paid by the check of the tutrix, duly honored; and

the tutrix went into possession of the property, and so remained until July 20, 1905, when it was sold by the plaintiffs (two of whom were, no doubt, emancipated for the purpose) to Leon Wolf (president of the Washington State Bank) for $3,360 cash. Considerable oral testimony, offered on behalf of the intervener, was admitted during the trial (subject to reservation as to its effect), the purpose of which was to show that the sale of the minors' interest in Melwood and their purchase of the Dunbar place (or, of their aunt's interest in that place) were alike in furtherance of an understanding between the aunt and the tutrix that a partition of all the real estate of the succession should be effected in that way; but the judge a quo eventually disregarded the testimony referred to and decided the case upon grounds to which we will advert hereafter. In that connection, however, it may be stated that, the father of the plaintiffs having but recently died, they and their mother were living in Kansas when she was summoned to the deathbed of her father-in-law, and the widow (by second marriage) of the decedent having asserted a claim against the estate, she (the mother of the minors) consulted counsel, who advised her in the matter, which was compromised. Thereafter the affairs of the succession were handled by another attorney, who was employed by Dr. Walker, and who, conceiving that there was no conflict of interest between the heirs, appears to have acted for them all. The testimony of the former tutrix as to the influence under which she acted runs, in part, as follows:

"Q. Mrs. Hawkins (Hawkins being the present name of the witness), I want to know how came you to sell that property belonging to your minors to Mrs. Lizzie Fahey; how come? A. Dr. Walker asked me, in the presence of his wife, if I would like to have the home place, and I told him that I did not want to reside upon it; but I would like to keep all the lands that were for the children. Q. Why did you want to keep it? A. I did not want to dispose of it, because it was not necessary for me to dispose of it. My father

and brothers requested me in this case to keep all lands. Q. Why? A. They knew they could not be disposed of in any way, until the children became of age. Q. Then you had no, desire, on your part, to dispose of any of the real estate? A. No, sir; I proposed to Dr. and Mrs. Walker to separate the land and let me keep my share; that I did not want to dispose of it. Q. What did they tell you? A. Dr. Walker told me in a thing like that I had to buy all they had or sell all I had. Q. Did you see any one then? A. I appealed to Mr. Veazie one morning—I had never employed him at all—and he said that that was the law in Louisiana, to settle with heirs; that I had to buy or sell. Q. When Dr. Walker spoke to you with reference to buying or selling the property, what did you say to him? * * * A. I contended that I did not want to do it at all; but if it could not be settled in any other way that I would have to."

There was also considerable testimony on the subject of the improvements placed by defendant on the property, and some testimony tending to show that the interveners were advised of the defect, or supposed defect, in the title of the property, before it accepted its mortgage, which mortgage was accepted merely as additional security for a pre-existing debt, for which a mortgage had been given on other property when the debt was contracted. There is no testimony showing, or tending to show, that, in 1905, when plaintiffs sold the Dunbar place to Mr. Wolf, they knew, or suspected, that it had been acquired otherwise than as appeared on the face of the title, i. e., by purchase from Dr. Walker; two of them having been, when they made the sale, under 21, and the other under 23, years of age

### Opinion.

The proceedings which led to the sale of the minors' interest in Melwood contain no hint or reference whatever to the Dunbar place, and there never was any proceeding in court looking to the sale of the minors' interest in that property, which property was acquired by Dr. Walker in his own name, and was sold by him to the tutrix, to his own advantage, and not in accordance with.

the alleged understanding "for a partition" which the intervener sets up. Thus Mrs. Walker bought the minors' interest in Melwood for $2,250, one-half the appraised value of the place; but the tutrix of the minors paid $1,790.75 for Mrs. Walker's interest in the Dunbar place, though one-half the appraised value was only $1,250. It is true that it was necessary to pay the Dunbars $500, and to release the judicial mortgage in favor of Flower & Co.; but it appears that Dr. Walker, though in making the purchase he used money obtained from the estate of John Fahey, assumed to have bought the judgment of Flower & Co. for his own account, and that, whilst he is said to have paid only $75 for it, he required the tutrix to pay it in full; whereas, if she had paid one-half of the amount thus paid by him and one-half the amount paid to the Dunbars, which was all that the minors were liable for, the price of the property would have been but $1,537.50, instead of $1,790.75. [1] It is plain, however, that the verbal understanding set up by intervener between the tutrix of the minors and their co-owners, with respect to the partition of the real estate in which they were interested, cannot be recognized or given effect as against the judicial averments and admissions by deed, whereby the acts of the parties are witnessed. [2] And that being the case, and it being also the case that, when, or even before the minors attained their majority, they sold the Dunbar place, without knowing that it had been acquired otherwise than by purchase from Dr. Walker, for cash, as recited in the act of sale from him to their tutrix, such sale by them was no ratification of the sale by their tutrix of their interest in Melwood.

[3] Thus far we concur in the views expressed by the learned trial judge, but, as he was of the opinion that this court has fallen into error in holding that, in order to make a sale, to effect a partition, under R. S. §§ 2359, 2667, or Act No. 25 of 1878, it is necessary that the whole property should be sold, he sustained the sale of the minors' interest in Melwood, as a valid private sale to effect a partition.

In April, 1906, this court, in a case in which it was necessary that the questions should be decided, interpreted the law governing the partition of property in which interdicts are interested as follows (quoting from the syllabus):

"(1) It is only in a case where the purpose is to effect a partition by the sale of the whole property that the interest of an interdict can be alienated at private sale; otherwise such interest must be sold at public auction.

"(2) A proceeding which has for its purpose only the private sale, to one of the plaintiffs, of the interest of an interdict in the property held in common, is unauthorized and illegal, and is ineffectual to divest the title of the interdict." Gallagher v. Lurges et al., 116 La. 755, 41 South. 60.

In November, 1909, a question certified by the Court of Appeal, Second circuit, was decided as follows (quoting the syllabus):

"Where, in what purports to be a partition proceeding, the interest of a minor, alone, in the property, is sold at private sale, the purchaser acquires no title. The law requires a sale, whether public or private, to effect a partition of property in which a minor is interested, to be made of the whole property, and, this, whether the purchaser be the co-owner or a third person." Moore v. Gulf Refining Co., 124 La. 609, 50 South. 596.

Since the rendition of the decision first above mentioned, the General Assembly has convened three times in regular session, and several times in extraordinary session; and since the last-mentioned case was decided it has convened once in regular session and twice in extraordinary session, the aggregate duration of the sittings being more than six months; and it has not seen fit to make any change in the law as thus interpreted, though there is reason to believe that the matter was brought to its attention by persons who, like the learned judge

a quo, believe that interpretation to be erroneous.

To again deal with the question on its merits, however: No one denies that, unless the sale is made to effect a partition, all property in which a minor is interested must be sold at public auction. No one denies that, prior to 1869, no sale could be made of property in which a minor was interested, whether for the whole or for a part, save by order of court, and at public auction. C. C. arts. 338, 339, 340, 341. And no one denies that a judicial sale, to effect a partition, meant, and means, a sale of the whole property, and was, and is, authorized only when the thing, i. e., the property held in common, is indivisible by its nature, or cannot be conveniently divided. C. C. art. 1339 et seq.

In 1869 an act was passed, which is now a section of the Revised Statutes, reading:

"Sec. 2667. When heirs of a succession hold property in common, and it is the wish of any one of them, or of a minor, represented by his tutor or tutrix, to effect a partition on the advice of a family meeting, duly convened, according to law, to represent the minor or minors, said property may be sold at private sale for its appraised value, said appraisement to be made and the terms of said sale to be fixed by the family meeting, and said proceeding to be homologated by the judge of probate of the parish in which the minor resides." Acts 1869, No. 134.

Section 2359 (being an act of 1869) reads "parish judge," instead of "judge of probate"; and Act No. 25 of 1878, reads: "When two or more persons, some or all, of whom" instead of, "When some heirs of a succession"; otherwise section 2359 and the act of 1878 are the same as section 2667. It is not denied, and cannot reasonably be denied, that the words "said property," as used in section 2667 (and in the act of 1878) relate back to the words "property held in common," and it is "said property"—that is to say, the "property held in common"— which is authorized to be sold at private sale. But the interest which a minor may own in property held in common is his, as any other property that he owns is his, and the law in regard to the sale of the property of which a minor alone is the owner is the same now as it has always been; it requires that the sale shall be made by order of court, at public auction. Parker v. Ricks, 114 La. 942, 38 South. 687; Touchy v. Gulf Land Co., Ltd., 120 La. 545, 45 South. 434, 124 Am. St. Rep. 440.

The position of the judge a quo, as we understand it, is that the law cannot mean what it says, because in that case a person owning property in common with a minor could not become the purchaser of such property, if it were sold at private sale, for the reason that, as to his own interest, he would have to buy from himself, and no one can buy that which he already owns. That, however, is an argument ab inconvenienti, which assumes that the main purpose of the law is to enable the co-owner with the minor to acquire, at private sale, the interest of the minor in the property held in common, and which also assumes that the lawmaker did not know the difference between the sale of property held in common and the sale of a particular interest in such property; neither of which assumptions can be entertained. To the contrary, we are bound to assume that, if the lawmaker had intended that the interest of the minor, in property held in common with others should, for the convenience and advantage of his co-owner, be sold to such co-owner at private sale, he would have found language in which to express that idea, and would not have required that, to effect a partition, the whole property, if indivisible by nature or not susceptible of convenient division, should be sold, in order that the proceeds may be divided. Even though, then, by a private sale of such property the co-owner with the minor should be precluded from becoming the purchaser of the property held in common, we know of no

rule of construction which would authorize us to hold that the law should not be enforced as written, nor can we discover that any particular hardship would result from such enforcement, since the co-owner, desiring to acquire the interest of the minor, has the privilege of requiring that the whole property, including the interest of the minor, be sold at public auction. It appears to us, however, that our learned Brother of the district court is unnecessarily concerned about the effect of the sale of property held in common, by all the co-owners, to one of their number, and that he loses sight of the substance of the question at issue in dealing with a shadow. Let us concede, for the purposes of the argument, that the co-owner, who buys the property held in common, does not, by joining in the act of sale as vendor and vendee, acquire any new title to the interest which he already owned, what harm is done? He does not thereby lose that interest or convey it to any one else, and he makes a record of the title, from which any one who reads may learn that all those who owned the property are parties to the sale. Beyond that, if the law which we are now considering provides, as it does provide, that the whole property held in common may be sold at private sale, and does not preclude a co-owner from becoming the purchaser, what have we to do with pre-existing laws which conflict with it, and which, by the express terms of section 2 of the act of 1878, are repealed? And why should not a co-owner as well buy the property held in common at a private sale as at a public sale? It will hardly be denied that the major co-owners of property held in common may have it sold at public auction, in order to effect a partition, or for any other reason, and that the auctioneer may adjudicate such property to one of such co-owners, and yet, if the theory of the learned judge a quo be correct, the adjudication would be af-

128 LA.—17

fected with a vice of some kind, because the adjudication of the entire property would include the interest already owned by the adjudicatee, and the latter would, through his agent, the auctioneer, be selling his own property to himself. And so in the case of the surviving partner in community, administering the succession of the deceased partner, who is expressly authorized to buy the community property (R. S. § 12). Again, it will hardly be denied that an ordinary partnership, or a corporation, may sell property at public or private sale to one of its members, though he be, save in name and as a fiction in law, already the owner of all the partnership or corporation assets. Why, then, for the purposes of the act of 1878, may it not be held, by another fiction of law, that the owners of property held in common constitute a juridical personage, capable of conveying such property, as a whole, to one of their number?

In any event, the fact remains that the law, in plain terms, requires that, in order to effect a partition by private sale of property held in indivision with a minor, the whole property must be sold, and we find no reason for attempting to attribute any other meaning to the law than the language imports. In this particular case, as we have already seen, advantage appears to have been taken of the minors in the absolutely unauthorized purchase, by their tutrix, of the Dunbar place, and it looks very much as though they fared no better in the matter of the sale of their interest in Melwood plantation; for it appears from the evidence that about the time they sold the Dunbar place for $3,300, Melwood, their half interest in which was sold for $2,250, was valued at $25,000 or $30,000.

It also appears, as we think, that the purpose of the defendant, represented by her husband, Dr. Walker, was, not to effect a partition of the real estate left by John

Fahey, but so to arrange matters that Mrs. Walker should acquire the interest of the minors in Melwood. The tutrix, a newly made widow from Kansas, was, as we infer, a guest in the house which Dr. and Mrs. Walker occupied as a home. She was told by Dr. Walker that she must either buy or sell, and, though she wanted to do neither, she appears to have been too inexperienced to resist the pressure thus brought to bear, or even to obtain legal advice, and the counsel employed by Dr. Walker instituted the partition suit in her name (she, no doubt, and for the reasons stated, consenting), and the result was, not a partition of the property held in common, or of the proceeds, but a sale of the minors' interest in that property to their aunt and co-owner. Whether, if the whole property had been offered, the minors would have obtained a better price for their interest we have no means of knowing. It may, however, be assumed, as we think, that, where merely a fractional interest in real estate is offered for sale, no purchaser is likely to be attracted, save a person who is already interested in the property, and particularly is that the case where the property is the plantation home of the co-owner, who wants to buy and who is surrounded by his friends and neighbors.

[4] The plea of the prescription of four and five years is not good. This is not a suit by minors against their tutor; nor is it a suit to set aside a partition, since there was no partition.

Counsel for plaintiffs contends that the defendant and the intervener should be regarded as possessors in bad faith, but, save in so far as they (the one or the other) have held the property since the defendant was informed of the defect in her title, we do not think the contention should be sustained, as we have no doubt that she was advised by counsel, and that the advice was given in good faith, that a partition could be effected by means of the proceeding which was adopted, that having been, and being now, perhaps, a widely prevailing impression. Mrs. Franklin testifies that she learned of the defect in her title when she attempted to borrow money with which to pay the debt due to the Opelousas National Bank, and that debt matured on November 17, 1906. We therefore adopt that as the date after which she must be regarded as a possessor in bad faith. The evidence in regard to the improvements is not, however, altogether satisfactory, more particularly as regards the time, whether before or after the date mentioned, at which some of the improvements were made, and we think the case upon that point should be remanded, with leave to plaintiffs to assert their claim for rents and revenues since that date, and the right to assert which they reserved. Since the appeal was taken, the defendant has died, and Isaac Roos, her administrator, has made himself a party defendant in her stead. It is therefore, ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiffs John K. Fahey, Felix A. Fahey, and Sallie G. Fahey, widow of C. D. Eckart, and against the defendant, Isaac Roos, administrator of the estate of Mrs. Elizabeth Franklin, wife of R. T. Franklin, and against the intervener, the Washington State Bank, decreeing null and void the sale, or attempted sale, by Lizzie Kouns, as natural tutrix, to Elizabeth Fahey, wife of John H. Walker, by act before Charles W. Duroy, notary, of date May 4, 1889, of the undivided one-half interest of said plaintiffs, then minors, in the property described in said act, to wit:

"The undivided one-half interest of the minors John F. Kahey in and to a certain plantation figuring as item 1 upon the inventory of the estate of John Fahey, deceased, No. 4,941, probate docket, district court, parish of St. Landry, being the last residence of said deceased, situated on the Bayou Waxia, about six

miles from the town of Washington, La., containing 125 acres, more or less; bounded on the north by Bayou Waxia; east by Elizabeth Fahey (purchaser), wife of John H. Walker; west by Bailey; south by Doyle and Henderson et al., together with all the buildings and improvements thereon, being a part of the same property acquired by the said John Fahey, deceased, at the succession sale of the estate of William Wikoff, made by Adolph Garrigues, parish judge and ex officio public auctioneer, on the 15th day of January, 1845, being item No. 275 of said sale. * * *

"Item 2. Also a certain tract of land situated in the parish of St. Landry, and lying on Bayou Waxia, as follows:

"1st. On the patent of the United States, No. 4,438, as the fractional S. W. ¼ and W. ½ of S. E. ¼ of section 8, T. 5 S., R. 5 E., containing 217.40 acres.

"(2) Patent No. 4,391, fractional W. ½ of N. E. ¼ of section 17, T. 5 S., R. 5 E., containing 84.30 acres.

"(3) Patent No. 4,345, the S. E. ¼ of S. E. ¼ of Sec. 8, T. 5 S., R. 5 E., containing 40.10 acres.

"(4) Receiver's receipt at land office, Opelousas, dated 15th day of January, 1849, No. 4,996, the S. E. ¼ of N. E. ¼ of Sec. 17, T. 5 S., R. 5 E., containing 40.30 acres.

"(5) Receipt No. 5,020, dated 9th March, 1849, the N. E. ¼ of the S. E. ¼ of Sec. 8, T. 5 S., R. 5 E., containing 40.50 acres.

"(6) Receipt No. 5,019, dated 9th March, 1849, the N. E. ¼ of the N. E. ¼ of Sec. 17, T. 5 S., R. 5 E., containing 40.50 acres.

"(7) Also a certain tract of land situated as aforesaid, bounded on one side, by Bayou Waxia and on the other side by land of vendor, containing 25.80 acres.

Said whole tract containing, in the aggregate, 488.50 acres,"—

and decreeing null and void, as to said undivided half interest, the sale of said property by the sheriff to the intervener herein, made in the matter of the Opelousas National Bank v. Mrs. Elizabeth M. Fahey, wife, etc., No. 18,684, civil docket, Sixteenth judicial district court, parish of St. Landry, and witnessed by the sheriff's deed, of date August 31, 1909, and decreeing said plaintiffs to be the owners of the property so described, and entitled to possession as hereinafter decreed. It is further decreed that, in order that there may be a proper adjustment, as between the parties litigant, with respect to the claim of the intervener for compensation for improvements placed on the property, and with respect to such claim as plaintiffs may assert for rents and revenues, the case be remanded for further proceedings according to law.

It is further decreed that defendant pay all costs incurred up to the filing of the intervention, and that intervener pay all subsequent costs in the district court, save those incurred in the effort to establish its claim for compensation for improvements, the question of the liability for which is to await the final judgment.

It is further decreed that intervener be allowed to retain possession, pending the determination of the question of the liability vel non of the plaintiffs for improvements, and until compensation therefor shall be made, in the event said question is determined in the affirmative. It is further decreed that the intervener pay the costs of the appeal.

Their honors, the CHIEF JUSTICE, and Mr. Justice LAND, dissent.