On Rehearing.
By the WHOLE COURT.
O’NIELL, J.
Plaintiffs have appealed from a judgment rejecting their demand, in *465 a petitory action, to recover a half interest in the square of ground bounded by Cleveland avenue, Carrollton avenue, Palmyra street and Solomon street, in the city of New Orleans. Plaintiffs are the four sons, the heirs at law, of Daniel Berry, deceased, from whom they claim title by inheritance. The defendants, 28 in number, are the possessors, respectively, of the several lots composing the square.
The land belonged to the marital community between Daniel Berry and his wife, Elizabeth Hogan Berry, mother of the plaintiffs here. Daniel Berry died in New Orleans in October, 1886, survived by the widow and four children. He left a will, bequeathing a fifth of his estate to his widow am| a fifth to each of his four children. The will was admitted to probate, and the widow was confirmed as testamentary executrix. She married Arthur Climo, and, thereafter, on the advice and recommendation of a family meeting, she was appointed tutrix of her four minor children. Subsequently, that is, on the 1st of March, 18S9, on the petition of Mrs. Climo, and on the advice and recommendation of a family meeting, the children’s interest — designated in the adjudication as two-fifths interest — in the community property was adjudicated to their mother, at the price of an appraisement made by experts appointed by the judge, and sworn by a deputy clerk of court. The adjudication was of the children's interest in 14 separate items of property, described as the twó-fifths interest in two whole squares of ground, one-half square, 8 lots in another square, and 11 lots in other squares, all being community property.
On the 2d of July, 1892, Mrs. Climo made a written contract of sale, or agreement to sell, to Frederick Camors, the square of ground now in contest. Because of the minor children’s mortgage on the property, there was some delay in carrying out the agreement of sale, and Mrs. Climo died before it was consummated. She had moved to Liverpool, England, where she died in 1903, leaving a will, bequeathing all of her property to her five sons, the four plaintiffs in this suit and a son of Arthur Climo. The will was admitted to probate in New Orleans, and P. F. Herwig, of this city, was confirmed and qualified as testamentary executor. Thomas Malynn was then appointed tutor of the four Berry children, plaintiffs in this suit; and, on his petition, an inventory was made of all of the property belonging to the four children. The first item on the inventory was the debt due by their mother’s succession, as the price at which their interest in the property of their father’s estate, including, of course, their interest in the property now in contest, had been adjudicated to their mother, which debt was appraised at the exact amount of the price at which the children’s interest in the property had been adjudicated to their mother, i. e.- $8,540.
One of the plaintiffs in this suit, Daniel Berry, having arrived at the age of majority, accepted his mother’s succession unconditionally, and, on the joint petition of himself and of Thomas Malynn, the latter as tutor of the three minor children, a judgment was rendered, on the 27th of June, 1909, sending Daniel Berry into possession of his share of the property of his mother’s succession, unconditionally, that is, without the benefit of inventory, and sending Thomas Malynn, as tutor, into possession of the share or interest of his wards, in the property of their mother’s succession, with the benefit of inventory.
In the meantime, on the petition of P. F. Herwig, as testamentary executor, certain property of the succession of Mrs. Climo, including the square of ground now in contest, was ordered by the court to be sold at public auction to pay the debts of the succession, and the property was adjudicated to a firm styled Reinach & Oteri. Two' days be *467 fore the adjudication was made to Reinaeh & Oteri, Frederick Camors brought suit against Herwig, as testamentary executor, to compel him to carry out the contract made by Mrs. Climo to sell to him (Camors) the square of ground mow in contest. After the adjudication was made to Reinaeh & Oteri, but before the testamentary executor had made a deed to them, Camors- filed a supplemental petition in his suit against the executor, making Reinaeh &.Oteri parties defendant, and praying for an annulment of the adjudication to them.' They, in turn, obtained a rule upon the executor to show •cause why the adjudication to them should not be annulled, for several reasons, among them being that Camors was demanding a deed for the property, in his suit against the executor, under the contract that had been made by Mrs. Climo. Judgment was rendered in favor of Reinaeh & Oteri, in their summary proceeding against the executor, annulling the adjudication to them. And, in the suit.of Frederick Camors v. P. F. Herwig, Testamentary Executor, et al., No. 39,753 of the docket of the civil district court, judgment was rendered in favor of the plaintiff, ordering the executor to make a deed of conveyance to Camors of the square now in contest, in compliance with the contract which had been made by Mrs. Climo. The suit had been brought, not only against the succession of Mrs. Climo, but also against her heirs, represented by the executor, on the allegation — which was a fact — that the heirs were nonresidents, they being then residents of Liverpool, England. The judgment against P. F. Herwig was therefore expressly rendered against him in his capacity as representative of the nonresident heirs of Mrs. Climo, as well as in his capacity of executor. In that respect, the proceedings appear to have been in accord with the provisions of article 123 of the Code of Practice, authorizing testamentary executors to defend suits brought against the successions they administer, when the heirs are not present or represented in the state. Herwig, executor, appealed from the judgment to the Court of Appeal for the parish of Orleans, and that court affirmed the judgment, commanding him to make a deed of conveyance to Camors, in compliance with the contract that had been made by Mrs. Climo.
When the decree in favor of Camors and against Herwig, executor, had become final, he filed a petition in the succession of Mrs. Climo, averring that he had to comply with the decree, and that, in order to convey a clear title, it was necessary to cancel the mortgages recorded in favor of the minor children of Mrs. Climo, particularly the mortgage of $8,540, securing the price of the adjudication to her of the interest of the four children of Daniel Berry in the property formerly belonging to his estate, which, as we have said, included the square now in contest. The executor therefore prayed for and was granted an order convoking a family meeting to consider and advise whether the mortgages in favor of the minor children should be canceled, in so far as they affected the square of ground which the executor had been ordered to convey to Camors, being the square now in contest. The family meeting recommended that the mortgages should be canceled, in so far as they affected the property which the executor had been ordered to convey to Camors; and, on a judgment of court approving the recommendation, the mortgages were canceled, in so far as they affected the square of ground now in contest. Thereupon, on the 5th of May, 1900, Herwig, in his capacity of executor, signed a conveyance of this property to Frederick Camors—
“with all legal warranties, and with full substitution and subrogation in and to all the rights and actions of warranty which the said succession [of Mrs. Climo] has or may have [had or might have had] against all preceding owners and vendors.”
*469 The deed was made before a notary public and two witnesses, and contained the usual acknowledgment of receipt of the price. The amount of the price was carried as a debit item against the executor on the account of his administration. And the final account which he rendered to the court was, after due publication, approved by a judgment of court.
When Daniel Berry, the eldest of the plaintiffs, had arrived at the age of majority, Thomas Malynn resigned from the office of tutor, and, on the advice and recommendation of a family meeting, Daniel Berry was appointed tutor of his three brothers, and qualified as such. Malynn rendered an account of his tutorship, which was approved by the undertutor of the minors, and by Daniel Berry, who, in his capacity as tutor of his three brothers, received and receipted for the balance of the funds due them, $7,-802.50. The final account of Thomas Malynn, tutor, was, after due publication, approved by a judgment of court.
Four years before this suit was filed, when two of the brothers of Daniel Berry had attained their majority, and the third brother was emancipated by a judgment of court, they signed, before a notary public and two witnesses, an acknowledgment that they had received from their tutor, Daniel Berry, a full and complete accounting of his administration of their affairs, together with all vouchers relating thereto; that they had had the account and vouchers in their possession longer than 10 days, and, after examining them, had found them to be correct; that their tutor had accounted to them for all money, property, and effects of any and every kind that he had ever had in his possession or under his control as tutor, for their account; and that they therefore granted him full and complete acquittance and release, and authorized the cancellation of all bonds, liens, and mortgages in their favor.
Each of the defendants holds title, through mesne conveyances, from Frederick Camors, who, as we have said, bought the square of ground from the testamentary executor, Herwig, acting in obedience of the judgment commanding him to carry out the contract by which Mrs. Climo had obligated hebself to sell the property to Camors.
Plaintiffs claim that their mother had title for only a half of the property; that is, for the half interest which she owned as sur-, viving partner in the marital community. They claim that the tenth interest bequeathed to her by her first husband (being the fifth of his half interest in the community property) reverted to them, the children of the first marriage, when their mother married again. Article 1753 of the Civil Code declares that, if a widower or widow marries again, having children of the previous marriage, he or she cannot dispose of property that was given or bequeathed to him or her by the deceased spouse; and that such property, by effect of the second marriage, becomes the property of the children of the previous marriage, and the surviving parent then has only the usufruct of it.
Plaintiffs contend that the adjudication to their mother of their two-fifths interest (being the four-fifths of their father’s half interest) in the property was null because the adjudication was only of the children’s interest in the property. They contend that article 343 of the Civil Code requires that such an adjudication shall be made of the whole property, that is, of the interest already owned by the surviving parent, as well as of the interest of the minor child or children. The article declares that a person who owns property jointly or in common with his or her minor child or children may have it adjudicated, either in whole or in part, to him or her, the parent, at the price' of an appraisement made by experts appointed and sworn by the judge, after a family meeting shall have declared that the adjudi *471 cation is for the interest of the minor child or children, and the undertntor shall have given his consent; and that the property so adjudicated shall remain specially mortgaged to secure the payment of the price for which it was adjudicated, and the interest thereon.
Each of the defendants denied that there was any defect in the title of Mrs. Climo, to the property which she obligated herself to sell, and which her testamentary executor afterwards sold for her succession, to Frederick Camors. In the alternative, they pleaded that plaintiffs’ action was barred by the 'prescription of 10 years, under articles 2221 and 3478 of the Civil Code, and by the prescription of 5 years, under article 3542, barring actions for the nullity or rescission of contracts, testaments, or other acts. Defendants also pleaded that plaintiffs were es-topped by their acquiescence, after arriving at the age of majority, in the proceedings had in the succession of their deceased father and mother, and particularly by their acquiescence in the judgment ordering the executor of their mother’s estate to sell the property to Frederick Camors, in compliance with the contract which plaintiffs’ mother had made. Defendants also pleaded, especially, that plaintiffs were estopped by the settlement which they had made with their tutor, after they had arrived at the age of majority, receiving and retaining the balance of the money that was coming to them from the succession of their father and from the succession of their mother. Defendants pleaded finally that plaintiffs were bound and precluded by the obligation of their deceased mother to warrant, and defend the title which she had contracted to convey, and which the executor of her estate afterwards conveyed, to Frederick Camors. Each defendant, and, in turn, each warrantor, therefore, called in warranty, and prayed for judgment against, his or her vendor, until the plaintiffs in this suit, as the representatives of their mother’s succession, were called in warranty to defend the title which she had obligated herself to defend. Therefore, if the plaintiffs have tacitly assumed their mother’s warranty obligation, they are in the anomalous situation of having to defend this suit which they brought.
[1] This warranty obligation is the most serious defense in the case. The eldest of the plaintiffs, Daniel Berry, who formally and expressly' accepted his mother’s succession unconditionally, that is, without the benefit of inventory, is, beyond all doubt, deprived of a right of action to attack the title which she, if she were living, would be obliged to defend. An heir who, after arriving at the age of majority, either expressly or tacitly accepts the succession unconditionally, that is, without the benefit of inventory, thereby binds himself for the debts or obligations of the deceased person, the same as if he himself had contracted them. Rev. Civ. Code, arts. 1013 and 1423. Among the obligations for which an unconditional heir is liable is the obligation of warranty, on the part of the deceased person, to defend a title which he has conveyed. Walker v. Fort, 3 La. 535 ; Stokes v. Shackleford, 12 La. 170 ; Smith v. Elliot, 9 Rob. 3 ; McQueen v. Sandel, 15 La. Ann. 140 ; Sevier v. Gordon, 29 La. Ann. 440 ; Gusman v. Berryman, Man. Unrep. Cas. 199 ; McCall v. Irion, 41 La. Ann. 1126, 6 South. 845 ; Chevalley v. Pettit, 115 La. 407, 39 South. 113 ; Cochran, v. Gulf Refining Co., 139 La. 1010, 72 South. 718 ; Griffing v. Taft (La. No. 23470) ante, p. 442, 91 South. 832, decided to-day, on rehearing.
[2] Minor heirs are not required to formally accept a succession, to avail themselves of the benefit of inventory; the acceptance is made for them, with the benefit of inventory, by meré operation of the law. Rev. Civ. Code, art. 977. By “the benefit of in *473 ventory” is meant the privilege or advantage which an heir may enjoy, of having his liability for the debts or obligations of the succession limited to the extent of the value of the estate which he inherits. Rev. Civ. Code, art. 1032. The benefit of inventory gives an heir the two advantages: (1) Of being discharged from the debts of the succession if he abandons all of the property of the succession to its creditors and the legatees; and (2) of not confounding his own property with that of the succession, and of thus preserving the right to claim any debt due him from the succession. Rev. Civ. Code, art. 1054. The benefit of inventory, therefore, does not give an heir the right to take possession, unconditionally, or as owner, of any of the property of the succession, without making himself liable personally for the debts or obligations of the succession. When a succession is accepted under benefit of inventory, the estate must be administered and liquidated — even though the beneficiary heir himself should be the administrator — for the benefit of the creditors primarily; the rights of the beneficiary heir being only residuary. Rev. Civ. Code, arts. 1039 to 10Y0.
[3] When the eldest of the plaintiffs, having arrived at the age of majority, accepted his mother’s succession unconditionally, he thereby abandoned the advantage of the so-called benefit of inventory. When the two of the plaintiffs next in age had arrived at the age of majority, and the youngest was fully emancipated, they accepted from their tutor (the eldest of the plaintiffs in this suit) all of the funds belonging to them, acknowledging that it was the correct balance of all of the funds that their tutor had received for their account. There is no doubt that the tutor had received the price, or an accounting of the price, of the sale made by the executor to J. B. Camors, in obedience to the judicial decree, commanding him to make the sale, in compliance with the obligation of plaintiffs’ deceased mother. In fact, it was proven, and not disputed, that the proceeds of the sale appeared on one of the accounts rendered by the executor; and his final account, filed with the tutor’s account, was approved by a judgment of court. The pláintiffs in this suit have not attempted to avail themselves of that right which the benefit of inventory afforded them — if it could be conceded that they have yet the right — of being relieved of the obligations of the succession of their mother by abandoning to the creditors all of the property or effects of the succession.
In the case of Sevier v. Gordon, 29 La. Ann. 442, it was said:
“It is true that minors are beneficiary heirs; that beneficiary heirs are entitled to the residuum only, after the debts of the succession are paid; and that they are not personally liable for the debts of the succession. It is equally true that the beneficiary heirs, when they attain their majority, may become heirs purely and simply, and may obtain possession as owners of the property of the succession, and be liable for its debts.. In this case the heirs provoked a partition, and went into possession. The succession thereupon ceased to exist; and those who were originally beneficiary heirs, because of their minority, became absolute heirs, and liable, each for his virile share, personally and unconditionally, for the debts of the succession which had not been paid.”
It is true the three plaintiffs who did not expressly^ accept their mother’s succession unconditionally received only the residuum of her estate. But the residuum would have been that much less if their mother’s succession had been compelled to make good her warranty obligation to Frederick Camors, or his transferees, before the succession was closed by the voluntary act of th'e heirs, when they had attained their majority, in accepting the balance due them from their tutors and discharging him. There remained unsatisfied then this warranty obligation of the succession of plaintiffs’ mother, which they cannot repudiate. It is a matter of no importance that they did not have that obligation in mind when they accepted the re *475 siduum of their mother’s estate. The fact remains that the residuum was more than it would have been if the warranty obligation of the succession had been satisfied before the succession was closed. In discharging their tutor, after they had attained their majority, piaintiffs acknowledged that they had examined the accounts rendered and vouchers furnished by their tutor, and that the accounts and vouchers were correct. Therefore they must have observed that they had received full credit for the price of the adjudication which they are now trying to annul; for that debt, due by the succession of their mother, was the first item on the inventory of the property which their tutor received for their account, and which he accounted for when they had attained their majority. And they must have observed that they had received credit also for the price for which the whole property was afterwards sold by the succession of their mother to Frederick Gamors, from whom the defendants now hold title. Under these circumstances, the three plaintiffs who did not expressly accept their mother’s succession unconditionally have surrendered the right to repudiate her warranty obligation.
In the case of Chevalley v. Pettit, 115 La. 407, 39 South. 113, on rehearing, this court expressed the opinion that heirs who had inherited the estate of their deceased uncle, not directly, as his nearest of kin, but by representation of their predeceased mother, a sister of the deceased uncle, were not bound by a warranty obligation of their deceased mother. The opinion was founded up-on the fact that the heirs had not accepted the succession of their mother, had not inherited anything from her, but had inherited only the estate of their uncle, who was not under any warranty obligation. The decision, therefore, is not in conflict, but in accord with the decisions which we have cited.
Appellants rely upon certain expressions of opinion in the case of Tessier v. Roussel, 41 La. Ann. 474, 6 South. 542, 824, which, however, we do not consider appropriate to-the case before us. The only question before the court in Tessier v. Roussel was whether the minor children of one Philomon Guidry, Jr., who was yet living and insolvent, might, at his death, have a right of action to reduce to the disposable portion a donation which Guidry had made to his father. The -principal argument against the contention that the heirs might some day inherit such right was that they would be constrained by a warranty obligation on the-part of their father to defend the title, resulting from certain judicial sales made in suits to which he had been a party. Answering the argument, Mr. Justice Fenner, for the court, said:
“Finally, it is, claimed that the obligations of warranty imposed upon Philomon Guidry, Jr., as the effect of the judicial sales-made in the suits to which he was a party, will forever es-top even Ms forced heirs from assailing the title of the purchasers at said sales. In other-words, the claim is that if the forced heirs of Guidry, Jr., should bring their action of reduction against Roussel, the latter Could repel it by opposing to them their obligation as heirs of their [his] warrantor to protect him against eviction, under the maxim: ‘Quern de evictione tenet actio eundem agentem repellit exceptio.’
“This contention might be sound if the forced heirs should accept the succession of Guidry, Jr., purely and simply; but, by operation of law, minor heirs accept only with benefit of inventory, and major heirs have the privilege of so accepting, which they would undoubtedly exercise in the case anticipated. * * *
“This right of action [of the forced heirs, to-reduce to the disposable portion a donation made by their ancestor] is not derived from the deceased. The deceased had no such right. His donation was perfectly binding as to him. Neither he, nor his creditors, nor his simple heirs, nor any person succeeding only to his rights, could attack it.
“The right of reduction is conferred directly on the forced heirs by the law, as one personal to them, which can be exercised by them alone and solely for their own benefit, so much so that even when the property is revendicated,. *477 the creditors of the succession have no claims upon it, but it passes to the forced heirs free from all succession debts and charges. On the other hand, the obligation of warranty is one personal to the deceased, binding on him and on his succession, and like all other obligations, .must look for satisfaction to that source alone.
“The beneficiary heir is not bound by it beyond the value of the extant * * * effects and may discharge himself entirely by simply abandoning the latter to the creditors.”
The reason why a person cannot, by any warranty obligation on his part, deprive his forced heirs of their légitime, or of their eventual right to sue to reduce to the disposable portion any excessive donation made by him, is that the légitime is reserved by the law itself, not by the grace of the ancestor, but in spite of him. If it were not so — if this reserve in favor of the forced heirs could depend upon the will or voluntary act of the ancestor — the law. on ’the subject would be stultified. But the plaintiffs in this case, although they are the forced heirs of their parents, are not suing as such, or asserting a right which the parents could not have deprived them of.
It is argued on behalf of appellants that they are exempt from any obligation of warranty on the part of their mother, in this case, because they are not claiming any interest in the property by inheritance from her, but are claiming only the interest which they inherited from their father. If appellants were now claiming an interest in the property by inheritance from their mother, the suit itself would be an unconditional acceptance of her succession. Rev. Civ. Code, 988 ; McQueen v. Sandel, 15 La. Ann. 140 ; Brashear v. Conner, 29 La. Ann. 347 ; Sevier v. Gordon, 29 La. Ann. 440 ; McCall v. Irion, 41 La. Ann. 1126, 6 South. 845 ; Heirs of Ledoux v. Lavedan, 52 La. Ann. 354, 27 South. 196. But the institution of a suit by an heir claiming title as such is not the only means of accepting a succession tacitly; for the Code says (article 988) that an heir accepts the succession tacitly when he commits any act which necessarily implies his intention to accept, and which he would have no right to commit except in his capacity as heir.
[4] It is argued finally, on behalf of appellants, that the adjudication to their mother of only their interest in the community property was not merely voidable but absolutely void, and was therefore not subject to tacit ratification. We doubt that the result would be different if we should regard the adjudication as an absolute nullity. But we do not so regard it. The fact that the appraisers appointed by the judge were sworn by a deputy clerk of court, instead of being sworn by the judge, was not a matter of such grave importance as to make the adjudication null ab initio. The plaintiffs here have not been injured by that irregularity, nor by the mere failure of the judge to go through the form of adjudicating to the mother the interest which she already owned, in the community property. It is true this court expressed the opinion in Lyons v. Women’s League, 124 La. 222, 50 South. 18, that such an adjudication should be made of the whole property, including the interest already owned by the adjudicatee. But the court was not then called upon to pass final judgment upon the validity of the adjudication, where only the interest of the minor child had been adjudicated to her mother. The suit of Mrs. Lyons was an action to compel the Women’s League to comply with a contract to buy her property from her; and the only question was whether the title tendered was so free from the danger of litigation that the Women’s League should have been compelled to accept the title. The decision in that case, however, was followed by- the rulings in Moore v. Gulf Refining Co., 124 La. 607, 50 South. 596, and Fahey v. Fahey, 128 La. 503, 54 South. 973, declaring that, in a private sale of property owned jointly by a major and minor, to effect a partition, according to Act 25 of 1878, *479 p. 47, amending and. re-enacting section 2667 of the Revised Statutes of 1870, even though the sale should be made to the major co-owner, the sale had to be of the whole property, that is, of the interest already owned by the major co-owner, as well as of the interest of the minor co-owner. The decisions prompted the Legislature to enact four statutes on the subject, two short-term statutes of repose, to protect all titles that had already emanated from such sales or adjudications, and two statutes declaring that, in making such sales or adjudications, it was not necessary to sell or adjudicate to the major co-owner the interest which he or she already owned. See Act 50 of 1912, p. 59, amending Act 25 of 1878, by declaring it unnecessary, in such case, to sell to the major co-owner the interest which he.already owned. See Act 53 of 1912, p. 63, barring by the prescription of six months actions to annul such sales, on 'the ground that only the interest of the minor co-owner or co-owners was sold to the major co-owner. That statute did not say that the prescription should run against minors; but this court held, in McNamara v. Marx, 136 La. 159, 66 South. 764, that the prescription did run against minors; and, on application for rehearing, it was held that inasmuch as the statute had described such an action as ■an “action to set aside or annul” a sale on that ground, the supposed defective title was not an absolute nullity. See, also, Act 78 of 1914, p. 195, amending and re-enacting Act 50 of 1900 (which was an amendment and re-enactment of article 343 of the Civil Code), by declaring it unnecessary, in making an adjudication such as we have before us, to adjudicate to the parent the interest already owned by him or her. See, also, Act 23 of 1916, p. 54, barring by the prescription of six months actions to annul or set aside such adjudications, on the ground that only the interest of the minor or minors was adjudicated, and declaring that the prescription should run against minors, interdicted persons, married women, and absentees.
Our conclusion that the plaintiffs in this suit have no right of action, and that the judgment appealed from, rejecting their demand, is therefore correct, does away with the defendants’ pleas of prescription, and other defenses.
The judgment appealed from, rejecting plaintiffs’ demand, is affirmed, at their cost.
PROVOSTY, C. J., concurs in the decree.
DAWKINS, X, concurs in the decree.